J-S03038-24

2024 PA Super 48

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HECTOR MANUEL RIVERA | : | |
| | : | |
| Appellant | : | No. 1000 MDA 2023 |

Appeal from the Judgment of Sentence Entered June 21, 2023
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0003163-2021

BEFORE:  OLSON, J., NICHOLS, J., and BECK, J.

OPINION BY BECK, J.:                    **FILED: MARCH 15, 2024**

Hector Manuel Rivera ("Rivera") appeals from the judgment of sentence entered by the Berks County Court of Common Pleas ("trial court") after a jury convicted him of multiple counts each of trafficking in individuals, conspiracy to commit trafficking in individuals, involuntary servitude, conspiracy to commit involuntary servitude, prostitution and related offenses, conspiracy to commit prostitution and related offenses, criminal use of a communication facility, and delivery of a controlled substance.[1]  Before this Court, Rivera challenges the admission at trial of expert testimony under section 5920 of the Pennsylvania Judicial Code,[2] relating to the behavior of sexual violence victims, and discretionary aspects of his sentence.  Because we conclude that

---

[1]  18 Pa.C.S. §§ 3011(a)(1)-(2), 903(a)(1), 3012(b)(5), (12), 5902(b)(1), (3), 7512(a); 35 P.S. § 780-113(a)(30).

[2]  42 Pa.C.S. § 5920.

the trial court properly permitted the expert testimony at issue under section 5920, and because Rivera failed to properly preserve his sentencing claim, we affirm his judgment of sentence.

The record reflects that during the latter portion of 2019, Alicia Rider ("Rider") sustained a series of physical assaults by her fiancé. N.T., 1/30/2023-2/1/2023, at 164-68. This abuse included Rider's fiancé slapping her across the face, hitting her over the head with her phone, dragging her by the head, and throwing her into the shower. *Id.* During this time, Rider was actively addicted to heroin and crack cocaine. *Id.*

In November 2019, Rider purchased crack cocaine over the internet from Rivera and another individual referred to in the record only as "Neil." N.T., 1/30/2023-2/1/2023, at 156-62, 195. After Rider made several purchases from Rivera and Neil, Rivera suggested that Rider have sex with him, Neil, and Neil's roommate in exchange for drugs. *Id.* at 162-63, 202-07. Rider agreed to Rivera's proposition, as she wanted access to the drugs. *Id.* at 202-07.

In April 2020, as the repeated assaults by her fiancé continued, Rider contacted Rivera through a mutual acquaintance, Bridget Thompson ("Thompson"), to escape the abuse. *Id.* at 172-73. Rivera picked up Rider and Thompson and took them to a hotel. *Id.* at 174-75. Rivera then purchased crack cocaine for the three of them to smoke in a hotel room paid for by Rider. *Id.* at 176-78. The following day, Rivera suggested listing Rider

on a website called "Skip the Games," advertising her as available to perform sex acts in exchange for money. *Id.* at 178-79, 181-82, 256, 258. Rivera and Thompson told Rider that she would not receive any more drugs unless she agreed to be listed on the website. *Id.* at 256. On that basis, Rider agreed to be listed. *Id.* at 179-80.

In the first three days after being listed on the website, Rider had approximately three to five "dates" (i.e., performing sex acts for money) per day. *Id.* at 184-85. The money Rider received from the "dates" went directly to Rivera and Thompson. *Id.* at 184, 262-263. In return, Rivera continued to supply Rider with crack cocaine. *Id.* at 186, 199. After the third day of sending Rider on multiple "dates" per day, Thompson became upset with Rivera and tired of Rider "whining," "crying," and "complaining," so Thompson stole Rider's money and left. *Id.* at 186, 263-64.

After Thompson left, Rivera and Rider moved to a different hotel where Rider continued to have "dates." *Id.* at 189-90. A few days later, however, Rivera and Rider ran out of money. *Id.* at 191, 225-26. During this time, Rider's fiancé contacted her, and Rivera encouraged Rider to get money from him. *Id.* Desperate to escape her circumstances, and despite the abuse she sustained at her fiancé's hands, Rider arranged to leave with him, telling Rivera that she was going on a "date." *Id.* Rider did not tell Rivera she was leaving because she was afraid he would not allow her to leave. *Id.* Rider

explained that Rivera had previously been mean to her and had threatened violence over money. *Id.*

Around this time, the Pennsylvania State Police received information from a confidential informant that a young woman was being trafficked by Rivera. *Id.* at 274. On June 18, 2020, police interviewed Rider, during which she detailed her interactions and relationship with Rivera. *Id.* at 274-75. Based on this information, police arranged multiple controlled buys between Rivera and the confidential informant. *Id.* at 282, 289-90, 340-41. Rivera was arrested and charged with multiple counts each of trafficking in individuals, conspiracy to commit trafficking in individuals, involuntary servitude, conspiracy to commit involuntary servitude, prostitution and related offenses, conspiracy to commit prostitution and related offenses, delivery of a controlled substance, and criminal use of a communication facility.

Prior to Rivera's trial, the Commonwealth provided notice of its intention to introduce expert testimony on human trafficking and sexual violence victim dynamics pursuant to section 5920. *See* Memorandum Regarding the Admissibility of Expert Testimony Pursuant to 42 Pa.C.S. § 5920, 1/26/2023. Rivera filed a motion to exclude the testimony. *See* Motion in Limine to Exclude Expert Testimony Related to "Human Trafficking," 1/26/2023. The trial court denied Rivera's motion, permitting the expert testimony of Special

Agent Gabriel Fabian of the Pennsylvania Office of Attorney General ("Agent Fabian"). *See* Trial Court Order, 2/2/2023.

At trial, Agent Fabian provided a general explanation of the meaning of the phrase "human trafficking," some of the terminology associated with human trafficking, and how perpetrators carry out human trafficking schemes (e.g., what websites traffickers use and how they advertise to potential clients). N.T., 1/30/2023-2/1/2023, at 99-110. Agent Fabian also discussed misconceptions associated with human trafficking, explaining that while violence does happen in human trafficking, traffickers are often able to control their victims through other coercive means, such as controlling access to drugs for someone with a substance abuse disorder. *Id.* at 110-14. Agent Fabian stated that traffickers also tend to isolate their victims by taking them to unfamiliar locations, away from family or any other type of support system. *Id.* at 115-16. Agent Fabian further testified that victims of human trafficking tend to not seek help from law enforcement, or otherwise talk to the police, because the victims themselves are often charged with crimes such as prostitution, drug possession, and retail theft. *Id.* at 116-20. Agent Fabian stated that victims of human trafficking typically do not see themselves as victims until long after they have been away from the situation and have had counseling. *Id.* at 120.

On February 1, 2023, a jury found Rivera guilty of all charges other than one of the three charged counts of involuntary servitude.[3]  On May 23, 2023, the trial court sentenced Rivera to an aggregate term of 33½ to 67 years of incarceration.  On May 31, 2023, Rivera filed a post-sentence motion to modify his sentence.  The trial court granted the motion in part and merged some counts together instead of running them concurrently, but left the overall sentence remained intact, and denied the remaining claims in the motion.

On July 10, 2023, Rivera filed a timely notice of appeal.  On July 25, 2023, the trial court ordered Rivera to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), and Rivera timely complied.

Rivera presents the following issues for review:

1.  Whether the [t]rial [c]ourt erred in admitting expert opinion testimony in the area of human trafficking where the expert invaded the province of the jury by drawing inferences from the evidence which effectively conveyed an opinion that [Rivera] was guilty?

2.  Whether the overall sentence is manifestly excessive?

Rivera's Brief at 4.

---

[3]  The jury acquitted Rivera of involuntary servitude under 18 Pa.C.S. § 3012(b)(13) ("Using any scheme, plan or pattern intended to cause the individual to believe that, if the individual does not perform the labor, services, acts or performances, that individual or another individual will suffer serious harm or physical restraint.").  It convicted him of involuntary servitude pursuant to 18 Pa.C.S. § 3012(b)(5) (related to "[t]aking or retaining the individual's personal property or real property as a means of coercion") and (b)(12) (related to "[f]acilitating or controlling the individual's access to a controlled substance").

In his first issue, Rivera argues that the trial court abused its discretion by allowing Agent Fabian to testify as an expert on human trafficking and sexual servitude pursuant to section 5920 of the Pennsylvania Judicial Code. Rivera's Brief at 21-25.[4]  Rivera maintains that section 5920(b)(1) permits expert testimony on human trafficking and sexual servitude only to the extent that it assists the factfinder in its understanding of sexual violence victim dynamics, victim responses to sexual violence, and the impact of sexual violence on victims during and after an assault. *Id.* at 25.  Rivera argues that "sexual violence" was not at issue in this case because his crimes solely involved subjecting Rider to sexual servitude in exchange for providing her access to controlled substances. *Id.* at 25.  In Rivera's estimation, the facts did not support a finding that his crimes involved sexual violence, rendering the testimony irrelevant and inadmissible, and that the admission of Agent Fabian's testimony "unfairly encouraged the jury to view Rider as a victim of sexual violence when [it] was not alleged or supported by testimony." *Id.* Additionally, Rivera asserts that Agent Fabian's testimony as an expert on human trafficking and sexual servitude terminology was improper because a layperson could easily understand such concepts or Rider could have defined the terms during her testimony. *Id.* at 22-23.

---

[4]  There is no dispute regarding Agent Fabian's qualifications to testify as an expert on human trafficking and sexual servitude, only the propriety of his testimony based upon the charges Rivera faced and the nature of the testimony provided. *See* Rivera's Brief at 21-25.

The trial court found Agent Fabian's testimony admissible pursuant to section 5920, which permits experts to testify to facts and opinions regarding victim responses and behaviors in criminal proceedings related to sexual assaults. N.T., 1/30/2023-2/1/2023, at 57. The trial court permitted Agent Fabian's testimony, finding it relevant to "1) characterize Rivera's conduct as being consistent with someone engaged in the business of sex trafficking and promoting prostitution and 2) explain the behavior of Rider." Trial Court Opinion, 9/7/2023, at 6.

> The standard of review for evidentiary challenges is well settled:
>
> The decision to admit or exclude evidence is committed to the trial court's sound discretion, and evidentiary rulings will only be reversed upon a showing that a court abused that discretion. A finding of abuse of discretion may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Matters within the trial court's discretion are reviewed on appeal under a deferential standard, and any such rulings or determinations will not be disturbed short of a finding that the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case.

*Commonwealth v. Koch*, 106 A.3d 705, 710-11 (Pa. 2014) (quotation marks and citations omitted).

The statute at the heart of this issue is 42 Pa.C.S. § 5920, which permits the use of "[e]xpert testimony in certain criminal proceedings." In particular, the statute allows a witness, qualified as an expert by either side, with "specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education

in, criminal justice, behavioral sciences or victim services issues, related to sexual violence or domestic violence," to testify in a criminal proceeding enumerated in subsection (a) of the statute to information "that will assist the trier of fact in understanding the dynamics of sexual violence or domestic violence, victim responses to sexual violence or domestic violence and the impact of sexual violence or domestic violence on victims during and after being assaulted." *Id.* § 5920(b)(1), (4). This testimony may include "facts and opinions regarding specific types of victim responses and victim behaviors," but may not address questions of the credibility of the victim or any other witness. *Id.* § 5920(b)(2), (3). The statute further delineates the crimes for which the General Assembly has determined such testimony is relevant and admissible. *See id.* § 5920(a) (discussed in detail below).

Rivera's entire argument is premised upon his belief that the crimes for which he was convicted were not crimes of sexual violence, but were drug related, rendering the expert testimony as to the dynamics of sexual violence, a victim's response to sexual violence, and/or the impact of sexual violence on a victim during and after an assault irrelevant and inadmissible. Rivera's Brief at 25. This raises the question of the meaning of the phrase "sexual violence" under section 5920—a question our appellate courts have not yet addressed.

To determine the meaning of "sexual violence" as it appears in section 5920, we begin with a review of the statute itself. When an issue of statutory

interpretation is before this Court, the Statutory Construction Act[5] guides our analysis. **Commonwealth v. Gamby**, 283 A.3d 298, 306 (Pa. 2022). The paramount principle of the Statutory Construction Act is that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a).

"The General Assembly's intent is best expressed through the plain language of the statute." **Commonwealth v. Brown**, 981 A.2d 893, 897 (Pa. 2009). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). "Therefore, when the terms of a statute are clear and unambiguous, they will be given effect consistent with their plain and common meaning." **Gamby**, 283 A.3d at 306. Courts must interpret and apply the statute as it is written; "we should not insert words into a statute that are plainly not there." **Commonwealth v. Green**, 291 A.3d 317, 327 (Pa. 2023) (citation and brackets omitted).

"We also presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable, and that the General Assembly intends the entire statute to be effective and certain." **Id.** (quotation marks and citation omitted). "To that end, courts must read and evaluate each section of a statute in the context of, and with reference to, the

---

[5] 1 Pa.C.S. §§ 1501-1991.

other sections of the statute[.]" ***Commonwealth v. Gurung***, 239 A.3d 187, 191-92 (Pa. Super. 2020) (citation, brackets, and quotation marks omitted). We presume "that the legislature placed every word, sentence and provision in the statute for some purpose[.]" ***Id.*** at 192 (citation omitted).

There is no question, and Rivera does not challenge, that the expert testimony defined in section 5920(b) is admissible in criminal cases involving crimes of sexual violence and domestic violence. Notably, although section 5920 has a "definitions" provision included in the statute, the General Assembly only defines the phrase "domestic violence," and not "sexual violence" therein. ***See*** 42 Pa.C.S. § 5920(c).[6] Section 5920(a), however, which defines the scope of the statute, states that it "applies" to certain enumerated criminal proceedings, including (1) any crime listed in Title 42, Chapter 97, Subchapters H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders) of Pennsylvania's Sex Offender Registration and Notification Act ("SORNA")[7] (2) the crimes and offenses under Title 18 (the "Crimes Code") listed under subsection (a)(2), including attempt, solicitation, or conspiracy to commit those crimes; and (3)

---

[6] Subsection (c) provides, in its entirety: "As used in this section, the term 'domestic violence,' means an offense under 18 Pa.C.S. § 2701 (relating to simple assault), 2702 (relating to aggravated assault), 2709.1 (relating to stalking) or 2718 (relating to strangulation) perpetrated against a family or household member, as that term is defined in 23 Pa.C.S. § 6102 (relating to definitions)." 42 Pa.C.S. § 5920(c).

[7] 42 Pa.C.S. §§ 9799.11-9799.40, 9799.51-9799.75.

domestic violence offenses. 42 Pa.C.S. § 5920(a); *see also Commonwealth v. Jones*, 240 A.3d 881, 897 (Pa. 2020) (stating that section 5920 "explicitly provides that a properly qualified expert may testify to facts and opinions regarding specific types of victim responses and behaviors in **certain** criminal proceedings involving sexual assaults") (emphasis added).

Beginning with section 5920(a)(1), it permits the admission of the expert testimony described in section 5920(b) at a trial for any crime listed in subchapters H and I of SORNA, all of which are sexual offenses. SORNA establishes a statewide registry of sexual offenders. 42 Pa.C.S. § 9799.16(a). On December 20, 2012, SORNA replaced the then existing sexual offender registration statutory provisions, commonly known as Megan's Law III, 42 Pa.C.S. §§ 9791–9799.9 (expired). The General Assembly implemented SORNA to bring Pennsylvania's sexual offender reporting system in line with the federal mandates of the Adam Walsh Child Protection and Safety Act of 2006, P.L. 109–248, 42 U.S.C. §§ 16901–16991, which requires a tier-based registration and notification scheme.

Turning to section 5920(a)(2), the statute enumerates specific crimes contained in Pennsylvania's Crimes Code for which section 5920(b) expert testimony can be presented. The criminal proceedings include those brought under:

(i) Chapter 30 (relating to human trafficking), if the offense involved sexual servitude.

(ii) Chapter 31 (relating to sexual offenses).

- 12 -

(iii) Section 4302 (relating to incest).

(iv) Section 4304 (relating to endangering welfare of children), if the offense involved sexual contact with the victim.

(v) Section 5902(b) or (b.1) (relating to prostitution and related offenses).

(vi) Section 6301(a)(1)(i) (relating to corruption of minors), if the offense involved sexual contact with the victim.

(vii) Section 6301(a)(1)(ii).

(viii) Section 6312 (relating to sexual abuse of children).

(ix) Section 6318 (relating to unlawful contact with minor).

(x) Section 6320 (relating to sexual exploitation of children).

42 Pa.C.S. § 5920(a)(2).

As is clear from the above recitation, the General Assembly limits the enumerated crimes for which the expert testimony provided in subsection (b) may be provided to those involving sexual conduct committed by the defendant. *See id.* For example, sections 3011 and 3012 of the Crimes Code define the crimes of trafficking in individuals and involuntary servitude, which involve subjecting a victim to either labor servitude or sexual servitude. *See* 18 Pa.C.S. §§ 3011, 3012. For proceedings brought under Chapter 30 of the Crimes Code (relating to human trafficking), however, the General Assembly has restricted the admissibility of section 5920(b) testimony to trials under Chapter 30 of the Crimes Code "if the offense involved sexual servitude." *Id.* § 5920(a)(2)(i). Therefore, through its limiting language, the General

Assembly makes clear that expert testimony concerning sexual violence victim dynamics is **only** permissible if a criminal defendant is charged with human trafficking or involuntary servitude and the offense involved sexual servitude (not labor servitude). ***See*** 42 Pa.C.S. § 5920(a)(2)(i).

Similarly, for the crime of prostitution, section 5920(a)(2) limits the admissibility of section 5920(b) testimony to charges brought under "Section 5902**(b)** or **(b.1)** (relating to prostitution and related offenses)." ***Id.*** § 5920(a)(2)(v) (emphasis added). The crime of prostitution is generally defined as a person engaging in sexual activity as a business. 18 Pa.C.S. § 5902(a). Sections 5902(b) and (b.1), however, relate to "promot[ing] prostitution of another" and "promoting prostitution of a minor." ***Id.*** § 5902(b), (b.1). By its limiting language, the General Assembly only allows expert testimony on sexual violence victim dynamics if a criminal defendant is charged with promoting the prostitution of another, and not when a person is charged with prostituting oneself. 42 Pa.C.S. § 5920(a)(2)(i).

This is also true for the crime of corruption of minors, 18 Pa.C.S. § 6301, as section 5920(b) testimony is only admissible if the defendant is charged under subsections (a)(1)(i) "if the offense involved sexual contact with the

victim,"[8] or (a)(1)(ii).[9] 42 Pa.C.S. § 5920(a)(2)(vi), (vii). There is an additional provision of section 6301 not enumerated under section 5920(a), which makes it a crime to aid, abet, entice, or encourage a minor to commit truancy. 18 Pa.C.S. § 6301(a)(2). Thus, for section 5920 to apply to a crime of corruption of minors, a criminal defendant must have been charged with corruption of minors for an offense involving sexual contact with the victim or otherwise enticing a minor to commit a sexual offense. *See id.* § 6301(a); 42 Pa.C.S. § 5920(a)(vi), (vii).

There are several statutory provisions included in section 5920(a)(2) for which a criminal defendant can be charged for committing sexual acts and nonsexual acts, but the General Assembly has restrained the availability of expert testimony on sexual violence victim dynamics defined in section 5920(b) to only the subset of those crimes that involve sexual acts. Thus, through its limiting language, and by specifically identifying the sexual crimes

---

[8] Section 6301(a)(1)(i) of the Crimes Code defines the crime of corruption of minors as "any act [that] corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime[.]" 18 Pa.C.S. § 6301(a)(1)(i). This Court has held that the language "any act" in section 6301(a)(1)(i) includes "sexual misconduct." *Commonwealth v. Semenza*, 127 A.3d 1, 14 (Pa. Super. 2015).

[9] Section 6301(a)(1)(ii) states that corruption of minors also occurs "by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31[.]" 18 Pa.C.S. § 6301(a)(1)(ii).

to which expert testimony detailed in section 5920(b) may be provided, the General Assembly has defined the phrase "sexual violence." The statutory term "sexual violence," when read in context with the overall statutory framework, can only apply to the crimes and offenses identified in subsections (a)(1) and (a)(2). We are bound to conclude that the General Assembly's choice to specifically identify certain crimes and charged conduct was a deliberate choice reflecting its intent that these crimes—and only these crimes—constitute crimes of "sexual violence" for which expert testimony contemplated in section 5920(b) is admissible. **See Gurung**, 239 A.3d at 192.

This interpretation is supported by the separate allowance of such testimony for the offenses defined as constituting "domestic violence" as stated in subsections (a)(3) and (c). As the expert testimony identified in section 5920(b) is only permitted to help the trier of fact understand "the dynamics of sexual violence or domestic violence, victim responses to sexual violence or domestic violence and the impact of sexual violence or domestic violence on victims during and after being assaulted," and crimes constituting "domestic violence" are specifically identified as such in the statute, the remaining crimes and conduct identified necessarily constitute crimes of "sexual violence." **See generally** 42 Pa.C.S. § 5920. This interpretation gives effect to every word included in section 5920 and allows the entirety of

the statute to be effective and certain. ***See Green***, 291 A.3d at 327; ***Gurung***, 239 A.3d at 192.

In the case at bar, Rivera was charged with multiple counts of trafficking in individuals, involuntary servitude, and prostitution. ***See*** Criminal Information – Amended, 1/26/2023. The trafficking in individuals and involuntary servitude offenses were all based upon Rivera placing Rider into sexual servitude; the prostitution offenses related to Rivera inducing Rider to commit prostitution. ***See id.*** The offenses of human trafficking involving sexual servitude, involuntary sexual servitude, and inducement to prostitution are all crimes of sexual violence as defined by section 5920(a). ***See*** 42 Pa.C.S. § 5920(a)(1), (2)(i), (v); ***see also id.*** § 9799.14(b)(4.1), (c)(1.4) (defining human trafficking pursuant to 18 Pa.C.S. § 3011(a)(1) and (2) and sexual servitude pursuant to 18 Pa.C.S. § 3012 as tier-one and tier-two offenses, respectively, under subchapter H of SORNA); ***id.*** § 9799.55(a)(1) (identifying prostitution under section 5902(b) as having a ten-year registration requirement under subchapter I of SORNA). Accordingly, Rivera was charged with multiple crimes of sexual violence. We therefore find Rivera's argument that Agent Fabian's testimony was not relevant or admissible under section 5920 because this case did not involve crimes of sexual violence unavailing.

We are likewise unpersuaded by Rivera's argument that Agent Fabian's testimony was irrelevant because the terminology, activities, and behaviors

associated with human trafficking and sexual servitude are all within the knowledge of a layperson. Rivera's Brief at 22. While a layperson may understand some of the activities and terminology associated with human trafficking and sexual servitude, the Pennsylvania Rules of Evidence "do not preclude a single witness from testifying, or offering opinions, in the capacity as both a lay and expert witness on matters that may embrace the ultimate issues to be decided by the fact-finder." *Jones*, 240 A.3d at 890 (citing Pa.R.E. 701, 702). Additionally, in this case, although Agent Fabian testified regarding human trafficking and sexual servitude generally, *see* N.T., 1/30/2023–2/1/2023, at 99-110, much of his testimony was dedicated to why victims of human trafficking and sexual servitude do not simply remove themselves from the situation and the dynamics related to victims of crimes of sexual violence. *See id.* at 110-20. In other words, he provided the very testimony that section 5920(b) contemplates. We therefore find no abuse of discretion in the trial court's determination that Agent Fabian's testimony was relevant and admissible under 42 Pa.C.S. § 5920.

For his second issue, Rivera challenges discretionary aspects of his sentence, asserting that that the trial court abused its discretion in sentencing him to 33½ to 67 years of incarceration. Rivera's Brief at 26-27. "The right to appellate review of the discretionary aspects of a sentence is not absolute and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014) (en

banc). To invoke this Court's jurisdiction to review a challenge to the discretionary aspects of a sentence, an appellant must satisfy a four-part test:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted).

Our review of the record reveals that Rivera properly preserved his discretionary aspects of sentencing claim in a post-sentence motion and filed a timely notice of appeal. *See* Post-Sentence Motion, 5/31/2023; *see also* Notice of Appeal, 7/10/2023.

Rivera also includes a 2119(f) statement in his brief before this Court. Therein, Rivera asserts that his sentence was manifestly excessive and "redundant" because he received multiple consecutive sentences, "effectively punishing [him] many times over for the same essential offense." Rivera's Brief at 5. This argument, however, differs significantly from the sentencing claim Rivera sets forth in the argument section of his appellate brief, which says nothing about the consecutive nature of his sentence. *See id.* at 26-27. Instead, Rivera argues that the trial court relied upon improper facts in

fashioning his sentence.[10]  **_Id._** at 26.  The Commonwealth has expressly objected to Rivera's failure to raise this argument in his Rule 2119(f) statement.  Commonwealth's Brief at 17.  Because Rivera failed to raise this specific sentencing claim in his Rule 2119(f) statement, we cannot review his discretionary aspects of sentencing claim.  **_See Commonwealth v. Karns_**, 50 A.3d 158, 166 (Pa. Super. 2012) (concluding that if an appellant fails to include a discretionary sentencing issue in his Rule 2119(f) statement and the Commonwealth objects, the issue is waived); **_see also Commonwealth v. Derrickson_**, 242 A.3d 667, 680 (Pa. Super. 2020) (stating that the 2119(f) statement must "sufficiently articulate[] the manner in which the sentence imposed violates a specific provision of the Sentencing Code or the norms underlying the sentencing process" for this Court to conduct its review).

Judgment of sentence affirmed.

---

[10]  In the argument section of his brief, Rivera asserts that in determining his sentence, the trial court relied on information unsupported by the record, including that he "handpicked" Rider for prostitution (noting instead that Rider was a drug addict and had a history of prostitution) and used "young girls" (observing that Rider is a woman with children and no other evidence was presented that he trafficked any other individuals).  Rivera's Brief at 26.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/15/2024