J-S31031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANEE SLATON | : | |
| | : | |
| Appellant | : | No. 2400 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 1, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008423-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANEE SLATON | : | |
| | : | |
| Appellant | : | No. 2401 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 1, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008425-2021

BEFORE: BOWES, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED OCTOBER 25, 2024**

Danee Slaton ("Slaton") appeals from the judgment of sentence imposed by the Philadelphia County Court of Common Pleas ("trial court") following her convictions of two counts each of aggravated assault of a child under thirteen years old, endangering the welfare of a child ("EWOC"), and possessing an instrument of crime ("PIC"), and one count of conspiracy to

commit aggravated assault of a child under thirteen.[1]  On appeal, Slaton challenges the weight of the evidence supporting her aggravated assault convictions and the discretionary aspects of her sentence.  After review, we affirm.

This case involves serious allegations against Slaton and her husband, Kelvin Daniels ("Daniels"), by three of Slaton's children.  T.R. and S.S. are Daniels' stepdaughters, and I.D. is Daniels' biological son.[2]  The three children lived in a home with Slaton and Daniels in Philadelphia.  Over the course of several years, Slaton and Daniels neglected, isolated, starved, humiliated, and physically abused the children beginning when T.R. was twelve years old, S.S. was eight years old, and I.D. was four years old.  The children rarely left the family home other than to attend occasional religious services.  They were enrolled in a cyber school, but rarely completed their schoolwork, and were instead given a purely religious education by Slaton and Daniels.  Slaton and Daniels forced the children to copy chapters of scripture by hand into a notebook, and often would not allow the children to eat or drink until they had finished those assignments.  When the children were permitted to eat, they often received only one meal per day.  T.R. and S.S. were frequently forced

---

[1] 18 Pa.C.S. §§ 2702(a)(9), 4304(a)(1), 907(a), 903.

[2] We note that Slaton's appeals relate solely to convictions involving S.S. and I.D. as victims.

to stay in the backyard until they finished their assignments, sometimes for so long that they had to sleep outside.

These myriad abuses led the children to devise a system of obtaining food and other necessities, which included helping one another sneak out of the basement window to run to the corner store to steal food and snacks for sustenance. When the girls were forced to stay outside, I.D. dropped food, blankets, and other necessities to them from an awning above the back porch. T.R. and S.S. would hide any food they could access in their religious garb so that they could eat it when Slaton and Daniels deprived them of meals. When Slaton and Daniels discovered that the children had been disobeying them by obtaining and hiding additional food, they forced T.R. and S.S. to walk around the house in their undergarments or without any clothing. Slaton and Daniels also installed additional surveillance in the home to monitor the children's activities.

Slaton and Daniels also subjected the children to extensive physical abuse, both to keep them compliant and obedient and as a punishment if they "stole" food or water. Slaton and Daniels hit all three children with, among other objects, extension cords, baseball bats, a wooden stick, and a meat tenderizer. If one parent was beating the children, the other would hold them down, encourage the other parent, or just watch and do nothing to stop the abuse. This physical abuse happened on a near-daily basis over the course of

several years, and often left the children dizzy, bleeding, bruised, and scarred.[3]

T.R. escaped from the home in 2019 and ran to the neighbor's house, where she told them about what was happening in their home.  The neighbors called the police, and T.R. was removed from the home by the Department of Human Services ("DHS") and placed into foster care.  Not long afterward, S.S. and I.D. were also removed from the home.  A physician, trained in child abuse pediatrics, conducted medical evaluations two years after their removal from the home finding evidence of permanent scarring on the children's bodies and that they experienced prolonged trauma.

On June 30, 2021, police executed search and arrest warrants at Slaton and Daniels' home.  Neither were present, though they observed the events through their surveillance system and told the police that they were violating Slaton and Daniels' rights.  On August 19, 2021, the U.S. Marshals Service Warrant Unit located and arrested Slaton and Daniels at a hotel in Maple Shade, New Jersey.

The Commonwealth charged Slaton with numerous crimes.  The case proceeded to a consolidated trial with Daniels, following which the jury found

---

[3] Daniels also sexually abused T.R. on numerous occasions.

Slaton guilty of the aforementioned crimes.[4]  On May 1, 2023, the trial court sentenced Slaton to an aggregate term of fifteen to thirty years in prison.

Slaton filed a timely post-sentence motion, asserting that her aggravated assault convictions were against the weight of the evidence and challenging the discretionary aspects of her sentence.  The trial court denied the motion.  Slaton timely filed the instant appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Slaton presents the following issues for review:

1.  Is the verdict of guilty with respect to the charges of aggravated assault against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice with respect to victim S.S. and victim I.D.?

2.  Is the sentence unduly harsh and excessive under the circumstances of this case where, *inter alia*, the lower court relied upon an improper factor in fashioning the sentence?

Slaton's Brief at 7.

## **Weight of the Evidence**

In her first claim, Slaton argues that the weight of the evidence presented at trial did not support her convictions of aggravated assault.  ***Id.*** at 28, 30.  Slaton asserts that the evidence provided by the Commonwealth to support her aggravated assault convictions is inconsistent, and the jury improperly gave greater weight to some evidence over the countervailing

---

[4] Slaton filed a motion for judgment of acquittal notwithstanding the verdict as to the conviction of conspiracy to commit aggravated assault against S.S., which the trial judge granted.

evidence. *Id.* at 31, 33. She contends that there are inconsistencies in S.S.'s testimony regarding any attempt to inflict serious bodily injury, highlighting that S.S. stated that she had not been abused by Slaton during an interview with a forensic interviewer from the Philadelphia Children's Alliance ("PCA") in September 2019. *Id.* at 30. Slaton claims that S.S. only reported physical abuse perpetrated against her by Slaton when a DHS worker read T.R.'s prior statements about the abuse to S.S. and proceeded to ask S.S. if those allegations were all true.[5] *Id.*

Slaton additionally contends that the physician who reviewed S.S.'s forensic interviews and related medical records in 2021 "disclosed no evidence of serious bodily injury." *Id.* Slaton argues that though T.R.'s testimony at the trial corroborated S.S.'s claims of abuse, T.R. also testified that she wanted her younger siblings to leave Slaton's home and would have done whatever she could to accomplish this end, giving T.R. a motive to "fabricate corroborative testimony." *Id.* at 32. Slaton concludes that S.S.'s testimony was not supported by physical or forensic evidence. *Id.*

Slaton further asserts that the jury's finding that she attempted to cause serious bodily injury to S.S. is against the weight of the evidence because she would have inflicted serious bodily injury if that was her intent. *Id.* at 31. Additionally, Slaton points to the stipulation that her brother would have

_____

[5] This occurred during a series of interviews of S.S. by DHS in 2021.

testified to her reputation as a peaceful and law-abiding person, arguing that evidence of good character may create a reasonable doubt of guilt. *Id.*

As to the aggravated assault conviction related to I.D. as the victim, Slaton argues that the physician who examined I.D. in 2021 testified that I.D. appeared to be healthy, with "healed marks on parts of his body," and therefore "did not identify any serious bodily injury on I.D." *Id.* at 34. Slaton further contends that there were inconsistencies in I.D.'s testimony regarding serious bodily injury because I.D. told DHS workers that he was not abused when questioned in July 2019. *Id.* at 34. Finally, Slaton again points to T.R.'s motive to fabricate corroborative testimony and Slaton's reputation as a peaceful and law-abiding person as countervailing evidence against that weighed against her aggravated assault conviction as to I.D. *Id.* at 35.

The following legal principles apply to a trial court's consideration of a challenge to the weight of the evidence supporting a conviction:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> Thus, to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,]

and uncertain that the verdict shocks the conscience of the trial court.

***Commonwealth v. Juray***, 275 A.3d 1037, 1046-47 (Pa. Super. 2022) (quotation marks, citations, and brackets omitted).

Our standard of review for weight claims, however, differs from that of the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Id.*** at 1047 (citation omitted).

Here, the trial court rejected Slaton's weight of the evidence challenge, finding that "the verdicts are wholly consistent with the overwhelming weight of the evidence." Trial Court Opinion, 2/20/2024, at 7. The court noted that a conviction may be based on the "uncorroborated testimony of a single witness," and therefore, each complainant's testimony alone could support Slaton's conviction. ***Id.*** at 6 (citing ***Commonwealth v. Johnson***, 180 A.3d 474, 478 (Pa. Super. 2018)). Further, the court held that, to the extent there were contradictions or conflicts in testimony, the jury properly evaluated and resolved that evidence, which is solely within its role as the factfinder. ***Id.*** at 7. The court added that in denying Slaton's weight claim, it reviewed all the

- 8 -

evidence, including the testimony of the complainants, photographs and medical records related to injuries, expert testimony, and Slaton's flight and efforts to avoid arrest after police came to her home. *Id.*

We conclude that the trial court did not abuse its discretion in rejecting Slaton's challenge to the weight of the evidence. Slaton asks this Court to reweigh the evidence in her favor, but it is the jury who serves as the arbiter of credibility, and is free to believe or disregard any part of a witness' testimony. *Juray*, 275 A.3d at 1046; *see also Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact") (citation omitted). Here, the jury considered the evidence presented by both sides and rendered the guilty verdicts, which the trial court found was supported by the evidence presented. This conclusion finds ample record support. Indeed, all three children testified to the serious bodily injuries that Slaton inflicted upon them. *See, e.g.,* N.T., 3/1/2023, at 27-31, 129-36; N.T., 2/28/2023, at 94-100. Furthermore, multiple witnesses corroborated the children's accounts of the physical abuse that Slaton inflicted upon them, including the physician who reviewed S.S.'s medical records and examined I.D*. See, e.g.,* N.T., 3/3/2023, at 77-86. Significantly, Slaton's allegation that there was no physical evidence that serious bodily injury was inflicted upon S.S. and I.D. does not render the verdicts against the weight of the evidence; this was simply a fact that the jury had to consider in assessing credibility, and multiple

witnesses, including the victims, testified to the abuse. **See Commonwealth v. King**, 959 A.2d 405, 411 (Pa. Super. 2008) (concluding that the lack of physical evidence did not render the verdict against the weight of the evidence where identification testimony of two witnesses supported the verdict).

Based on our review of the record, the trial court did not abuse its discretion in denying Slaton's weight challenge. **See Commonwealth v. Gilliam**, 249 A.3d 257, 270 (Pa. Super. 2021) (concluding that the trial court did not abuse its discretion in denying appellant's weight challenge where he merely asked this Court to assume the role of factfinder and reweigh the evidence in his favor). Slaton's first issue fails.

## **Discretionary Aspects of Sentencing**

In her second claim, Slaton challenges discretionary aspects of her sentence. An appellant may not appeal discretionary aspects of her sentence as a matter of right; rather she must invoke this Court's jurisdiction on a such a claim by satisfying a four-part test:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or a in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of her appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raise a substantial question for our review.

**Commonwealth v. Rivera**, 312 A.3d 366, 376-77 (Pa. Super. 2024) (citation and brackets omitted).

- 10 -

Here, Slaton preserved her claim in a post-sentence motion and filed a timely appeal. She also included a Pa.R.A.P. 2119(f) statement in her brief, wherein she alleges that the trial court imposed a harsh and excessive sentence and failed to consider several mitigating factors in fashioning her sentence, including her age, lack of prior criminal history, engagement in rehabilitative programs, and inability to leave the home where the abuse occurred without further endangering her children. Slaton's Brief at 42-44. This presents a substantial question for our review. *See Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (holding that "an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question").

Our standard of review for discretionary aspects of sentencing claims is clear and well established:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown by merely an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Lekka*, 210 A.3d 343, 350 (Pa. Super. 2019) (citation omitted). The sentencing court receives such broad discretion because the sentencing judge can best assess "factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference." *Commonwealth v. Andrews*, 730 A.2d 764, 768 (Pa. Super.

- 11 -

1998) (citation omitted). "Where the sentencing court had the benefit of a presentence investigation report …, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (citation and quotation marks omitted).

Slaton alleges that the sentencing judge failed to consider numerous mitigating factors in fashioning her sentence. She argues that this led to the imposition of an excessive sentence beyond what is necessary for the protection of the public, the gravity of her conduct, and her rehabilitative needs. Slaton's Brief at 48-49, 52. Specifically, she contends that the court failed to consider the trial evidence that established her participation in rehabilitative programs required by the Family Division and her compliance with the orders of that court in her efforts to reunite with her children. *Id.* at 48. Further, Slaton contends that the court failed to consider her age, her lack of prior criminal history, the children's desire to maintain a relationship with her expressed in their victim impact statements, and the abuse that Slaton suffered as a child as a catalyst for her actions. *Id.* at 48-49. Finally, Slaton argues that the court did not consider testimony provided by I.D. indicating that Slaton "sought to leave the home where the abuse occurred but did not because leaving would have required her to abandon her children to [Daniels'] control." *Id.* at 51. Slaton concludes that the sentencing court's

failure to consider these mitigating factors led to the imposition of a sentence that is excessive under the circumstances. *Id.*

Additionally, Slaton contends that her aggregate sentence of fifteen to thirty years of imprisonment is excessive because it involved the imposition of consecutive sentences for convictions that were part of a "single, overarching criminal episode."[6] *Id.* at 50. She argues that these consecutive sentences imposed for offenses that were committed concurrently results in an aggregate sentence that is "significantly greater than the statutory maximum" for any one of the offenses. *Id.*

We have reviewed the record and conclude that the sentencing court appropriately considered the identified mitigating factors and fashioned Slaton's sentence accordingly. The trial court had the benefit of a presentence investigation report, *see Moury*, 992 A.2d at 171, and further expressly considered Daniels' influence over Slaton, the particular circumstances of the ongoing abuse against the children, the sentencing guidelines for each conviction, Slaton's allocution, and the victim impact statements. N.T. 5/1/2023, at 74-75. The court also weighed "the need to protect society, in particular, children" and "the seriousness of the offenses and the impacts on the victims." *Id.* at 75.

---

[6] Specifically, Slaton is referring to her aggravated assault convictions and her conspiracy conviction, the sentences for which were ordered to run consecutively. She received concurrent sentences for her convictions of EWOC and PIC.

As to the length of the sentence, the trial court is well within its discretion to impose sentences consecutively rather than concurrent sentences. *See, e.g., Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa. Super. 2005). Moreover, contrary to Slaton's argument that her convictions arose from a singular course of conduct, as the trial court found, the evidence produced at trial indicates a pattern of conduct that included numerous acts occurring over the course of several years. *See* N.T., 5/1/2023, at 75 ("This [c]ourt finds that the evidence ... establishes that the abuse spanned for years[.]"). Based upon the trial court's findings, the fact that it was informed by Slaton's presentence investigation report, and the well-settled law, we conclude that Slaton's sentence is not manifestly excessive and that the trial court did not abuse its discretion.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/25/2024