J-A10030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ABDUL MALIK SHAKUR :
:
Appellant : No. 267 EDA 2024

Appeal from the Judgment of Sentence Entered December 7, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001528-2020

BEFORE: PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BECK, J.: **FILED JUNE 18, 2025**

Abdul Malik Shakur ("Shakur") appeals from the judgment of sentence

entered by the Delaware County Court of Common Pleas ("trial court")

following a resentencing hearing. On appeal, Shakur challenges the

sufficiency of the evidence to support several of his convictions and the

discretionary aspects of his sentence. Finding one of Shakur's sentencing

claims to have merit, we vacate and remand for resentencing.

A prior panel of this Court summarized the substantive facts:

[A]t about 9:00 p.m. on October 5, 2019, Shakur and an
unidentified co-conspirator forced their way into the home of
Devon Craig [("Craig")] in Chester Township, Delaware County,
where Craig was playing video games in his living room with his
cousin, Anwaar Sammons [("Sammons")], and Sammons' four-
year-old daughter and fifteen-year-old son. Shakur was armed
with a gun and the other individual was armed with a knife.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Neither man wore a mask or other item to hide their identity. Shakur yelled at everyone to get onto the floor while he and his co-conspirator ransacked the home, demanding that the occupants turn over "the stuff." The victims pleaded with Shakur, telling him that they had no idea what Shakur was looking for, but Shakur continued to terrorize them. Putting his gun to the head of the four-year-old little girl, Shakur told Craig and Sammons that he would kill her unless they got what they came for.

Shakur and his cohort remained in Craig's residence for forty-five minutes to one hour. They ransacked the residence, and Shakur repeatedly hit Craig, Sammons, and the fifteen-year-old boy in the back of their heads with his firearm and stole both Craig's and Sammons' wallets. While threatening the victims, Shakur informed them that he did not care if the police arrived; he would get in a shootout with them. When Shakur again demanded "the stuff," Craig told Shakur that he did not know what they were looking for but to just take his truck. In response, Shakur and his cohort told him, "Okay you can come for the ride." They ordered Craig to stand and strip down to his underwear, and they separated Craig from his family and forced him into the hallway towards the front door. Craig knew that he probably would not return if he left with Shakur, so he fought for his life in the hallway. Despite the attempts by Shakur's cohort to stab Craig, he was able to fight them off and push them out the door. Sammons pushed a couch in front of the door and immediately called the police. Shakur and his fellow intruder stole Craig's pickup truck and drove away.

Sammons and Craig gave a description of Shakur and the other intruder to police that evening. Craig gave his description while at the hospital receiving treatment for his injuries. Two days later, while at a gas station in Chester, Sammons observed Shakur, who was wearing the same outfit that he wore during the burglary. Instead of approaching him, Sammons took down the license plate number of the car that Shakur was driving. Sammons relayed this information to Detective Mullen of the Chester Police Department, who tracked the license plate to Shakur's girlfriend.

Detective Mullen arranged a photo array that he showed Sammons. Before the detective could arrange the photo array on the table, Sammons pointed out Shakur, stating he was "one million" percent sure it was him. Sammons also told Detective

Mullen that the other home invader was not in the array. After the incident, fearing for his life and the life of his family, Craig left town and did not respond to Detective Mullen's attempts to contact him.

Shakur was arrested in October 2019, and his case proceeded to a bench trial in early November 2021.

*Commonwealth v. Shakur*, 292 A.3d 1084 (Pa. Super. Jan. 9, 2023) (non-precedential decision) (record citations omitted; party's name supplied), *appeal denied*, 300 A.3d 319 (Pa. 2023).

The trial court found Shakur guilty of robbery, firearms violations, possession of an instrument of crime, aggravated assault, theft by unlawful taking, burglary, kidnapping, unlawful restraint, robbery of a motor vehicle, conspiracy to commit robbery, conspiracy to commit aggravated assault, conspiracy to commit burglary, conspiracy to commit kidnapping, conspiracy to commit unlawful restraint, conspiracy to commit robbery of a motor vehicle. On January 7, 2022, the trial court sentenced Shakur to an aggregate term of twenty to forty-one years in prison. Relevantly, the trial court imposed consecutive sentences for robbery, possession of firearm prohibited, aggravated assault, theft, and unlawful restraint, with the sentences for the remaining counts imposed concurrently.

Shakur appealed, arguing that the evidence was insufficient to support his convictions, and raising claims challenging his sentence. This Court affirmed in part, vacated in part, and remanded for resentencing. Specifically, the prior panel found that the trial court erred in convicting and sentencing Shakur on eight conspiracy counts where each crime underlying the

- 3 -

conspiracy was part of the same conspiratorial relationship. Thus, this Court affirmed the conspiracy to commit robbery conviction, but vacated the remaining conspiracy convictions and sentences therefor. Additionally, the Court vacated Shakur's theft sentence, as it should have merged with his robbery sentence. Because the holding affected the entire sentencing scheme, this Court vacated his sentence, and remanded for resentencing on the remaining convictions.

On December 5, 2023, the trial court held a new sentencing hearing, after which it resentenced Shakur to the same aggregate term of twenty to forty-one years in prison. Shakur filed a post-sentence motion. After holding a hearing, the trial court denied the motion. Shakur timely appealed.

On appeal, Shakur raises the following issues:

1.  Whether the evidence was insufficient to establish Shakur's guilt for the offense of Persons not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms, 18 Pa.C.S. § 6105, where the Commonwealth presented no evidence that Shakur possessed a "firearm" as defined by 18 Pa.C.S. § 6105[](i)?

2.  Whether the evidence was insufficient to establish Shakur's guilt for the offense of Firearms not to be Carried Without a License, 18 Pa.C.S. § 6106, where the Commonwealth presented no evidence that Shakur possessed a "firearm" as defined by 18 Pa.C.S. § 6102?

3.  Whether the trial court erred as a matter of law and violated the discretionary aspect of sentencing by utilizing the deadly weapon used enhancement on counts 44, 45, 46, and 47, where the Commonwealth failed to present evidence that a firearm, deadly weapon, or device capable of causing serious injury or death was used?

4.  Whether the trial court erred as a matter of law and violated the discretionary aspect of sentencing by imposing a sentence in the aggravated range of the sentencing guidelines on counts 44, 46 and 47 without providing a separate statement of reasons for imposing an aggravated sentence?

5.  Whether the trial court erred as a matter of law and violated the discretionary aspect of sentencing when it imposed a manifestly excessive and unreasonable aggregate sentence of 20 to 41 years of incarceration, failing to state adequate reasons for imposing the sentence, relying on inappropriate factors not in the record, failing to consider a presentence investigation and failing to give individualized consideration to Shakur's background, personal history and rehabilitative needs?

Shakur's Brief at 4-5 (party's name added and parenthetical trial court answers omitted).

## Sufficiency of the Evidence

In his first two issues, Shakur argues that the evidence was insufficient to support his convictions of persons not to possess a firearm and firearms not to be carried without a license. These claims, however, are not properly before this Court. As we have previously held, a limited remand for resentencing by this Court does not entitle an appellant to relitigate claims unrelated to resentencing in a subsequent appeal. *See Commonwealth v. Williams*, 151 A.3d 621, 625 (Pa. Super. 2016) (holding that where a defendant's first direct appeal resulted in a remand for the limited purpose of resentencing, the defendant "is barred from raising any issues other than a challenge to the sentence imposed on remand" in the direct appeal from the

resentencing). Thus, Shakur's sufficiency claims are waived for failing to raise them in his first direct appeal. ***See id.***

### Discretionary Aspects of Sentence

Shakur's final issues challenge the discretionary aspects of his sentence. There is "no absolute right to appeal when challenging the discretionary aspect of a sentence." ***Commonwealth v. Crump***, 995 A.2d 1280, 1282 (Pa. Super. 2010). To invoke this Court's jurisdiction, Shakur must satisfy the following four-part test:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

***Commonwealth v. Rivera***, 312 A.3d 366, 376-77 (Pa. Super. 2024) (citation and brackets omitted).

A substantial question is determined on a case-by-case basis and exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. McCain***, 176 A.3d 236, 240 (Pa. Super. 2017). A "substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa. Super. 2013).

The record reflects that Shakur preserved his claim in a post-sentence motion, filed a timely notice of appeal, and included a Rule 2119(f) concise statement in his brief. Further, Shakur raises several substantial questions, including his claim that the trial court erred in applying the deadly weapon enhancement,[1] that the trial court failed to provide reasons on the record for an aggravated range sentences,[2] and that the trial court failed to consider the relevant sentencing factors pursuant to 42 Pa.C.S. § 9721(b).[3]

When reviewing a challenge to the discretionary aspects of sentencing, our standard of review is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Bankes*, 286 A.3d 1302, 1307 (Pa. Super. 2022) (citation omitted).

> When a sentence is vacated and the case is remanded to the sentencing court for resentencing, the sentencing judge should start afresh. Reimposing a judgment of sentence should not be a mechanical exercise. Given the important nature of the interests involved, the judge at the second sentencing hearing should reassess the penalty to be imposed on the defendant—especially

---

[1] *See Commonwealth v. Tavarez*, 174 A.3d 7, 10 (Pa. Super. 2017).

[2] *See Commonwealth v. Mrozik*, 213 A.3d 273, 275 (Pa. Super. 2019).

[3] *See Commonwealth v. Derry*, 150 A.3d 987, 992 (Pa. Super. 2016).

where defense counsel comes forward with relevant evidence which was not previously available. Thus, a defendant's conduct since the prior sentencing hearing is relevant at resentencing. The sentencing judge must take note of this new evidence and reevaluate whether the jail term which a defendant received is a just and appropriate punishment.

***Commonwealth v. Morgan***, 258 A.3d 1147, 1158 (Pa. Super. 2021)

(citations, quotation marks, and brackets omitted).

<u>Deadly Weapon Enhancement</u>

Shakur first asserts that the Court utilized incorrect sentencing guidelines as to his four convictions of unlawful restraint by applying the deadly weapon used enhancement. ***See*** Shakur's Brief at 31-32. According to Shakur, the Commonwealth presented no evidence at trial to establish the use of an actual firearm. ***See id.***

"The Deadly Weapon Enhancement shall apply to each conviction offense for which a deadly weapon is possessed or used." 204 Pa. Code § 303.10(a)(4).

> [W]hen the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.17(b)). An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual:
>
> (i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded …

204 Pa. Code § 303.10(a)(2). "Thus, to establish use of a deadly weapon under this provision, the record must show that the defendant used the

weapon to threaten or injure the victim while committing the particular offense." ***Tavarez***, 174 A.3d at 11.

The evidence presented at trial established that Shakur entered the home brandishing a firearm and that he hit Craig with the gun. N.T., 11/3/2021 at 87. Additionally, Shakur put the gun to the head of a four-year-old girl and told Craig and Sammons that he would kill her unless he and his coconspirator obtained what they wanted. N.T., 11/4/2021, at 7-12; N.T., 11/3/2021, at 80-92. Shakur also used the firearm to pistol whip Craig, Sammons, and the fifteen-year-old boy present in the house. N.T., 11/4/2021, at 7, 8; N.T., 11/3/2021, at 59, 72, 87, 89.

Thus, the record plainly supports the trial court's conclusion that Shakur used a gun to threaten or injure the victims during the burglary. We conclude the trial court properly utilized the deadly weapon used enhancement. ***See Tavarez***, 174 A.3d at 11.

<u>Reasons for Aggravated-Range Sentences</u>

Shakur next asserts that the trial court imposed an aggravated-range sentence for three of the unlawful restraint convictions without stating reasons on the record for imposing such sentences. Shakur's Brief at 33-34. He contends that this is error, requiring that we remand the matter for resentencing. We agree.

"Where the trial judge deviates from the sentencing guidelines ... he must set forth on the record, at sentencing, in the defendant's presence, the

permissible range of sentences under the guidelines and, at least in summary form, the factual basis and specific reasons which compelled the court to deviate from the sentencing range." ***Commonwealth v. Garcia-Rivera***, 983 A.2d 777, 780 (Pa. Super. 2009) (citation omitted).

> In every case where the court imposes a sentence or resentence outside the guidelines adopted by the Pennsylvania Commission on Sentencing …, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines to the commission, as established under section 2153(a)(14) (relating to powers and duties). Failure to comply shall be grounds for vacating the sentence or resentence and resentencing the defendant.

42 Pa.C.S. § 9721(b); ***see also Commonwealth v. Mrozik***, 213 A.3d 273, 278 (Pa. Super. 2019) ("When the court imposes an aggravated or mitigated sentence, it shall state the reasons on the record and on the Guideline Sentence Form, a copy of which is electronically transmitted to the Commission on Sentencing in the manner described in § 303.1(e).") (citation omitted).

The guideline sentencing form stated that for Shakur's conviction of unlawful restraint at count 44, the standard range with the deadly weapon enhancement was twelve to twenty-two months of incarceration, and the aggravated range started at twenty-five months. ***See*** Sentencing Guideline Form (Count 44). The trial court imposed a sentence of two to four years in prison on this conviction, and in the reason for sentence section stated: "Above; Recommendation of the prosecution." ***See id.***; ***see also*** Sentencing

- 10 -

Order, 12/7/2023, at 2.[4]  For the unlawful restraint convictions at counts 46 and 47, the guideline sentencing forms stated that the standard range with a deadly weapon enhancement was thirty-nine to forty-five months of incarceration, with the aggravated range starting at fifty-four months.  **See** Sentencing Guideline Forms (Count 46 and 47).  The trial court imposed a sentence of five to ten years in prison on each conviction and again stated in the reason for sentence sections: "Above; Recommendation of the prosecution."  **See id.**; **see also** Sentencing Order, 12/7/2023, at 3.

The record further reflects that at the resentencing hearing, prior to imposing the sentence, the trial court stated only the following:

> First of all, the court wants to re-emphasize the fact this was a very serious crime, and I think the original sentence reflects that. As pointed out by the Commonwealth, even with the technical changes in the original sentence, the order really did not change, as far as time is concerned.  One thing I want to add that neither counsel mentioned was that, at the conclusion, if you will, of this crime, [Shakur] tried to take one of the victims with him.  He resisted.  The [trial] court has no question in its mind that, had the victim not fought off his assailants, he'd probably be dead today.  I think that's a part of the sentence that has to be taken into consideration.  As I mentioned earlier, the recommended re-sentencing suggested by the Commonwealth basically is nothing more than reiterating the original 20 to 41, as found on Pages 12 and 13 of the Commonwealth's memo[.]

_____

[4] "Where a court explicitly states its intention to impose a standard sentence, then a sentence at the cusp of the standard and aggravated ranges is a standard [g]uideline sentence."  **Mrozik**, 213 A.3d at 278 n.9.  Here, despite the minimum sentence falling between the standard range and the aggravated range, the trial court indicated that it imposed a sentence above the standard range; therefore, the sentence at count 44 is an aggravated range sentence. **See id.**

N.T., 12/5/2023, at 16-17. It did not provide reasons for imposing the aggravated range sentences for the three counts of unlawful restraint.[5] ***See, e.g., Commonwealth v. Clemat***, 218 A.3d 944, 960 (Pa. Super. 2019) (noting that an aggravated range sentence is justified where the individual circumstances of the case are atypical of the crime for which the defendant was convicted, requiring a more severe punishment).

As the trial court failed to set forth on the record, and in Shakur's presence, the factual basis and specific reasons for deviating from the sentencing guidelines on the three unlawful restraint sentences, we are constrained to vacate the sentence and remand for resentencing. ***See Mrozik***, 213 A.3d at 278 (vacating the aggravated range sentence where the

---

[5] In its Pa.R.A.P. 1925(a) opinion, the trial court indicated it aggravated the unlawful restraint sentences based upon its statement at the sentencing hearing that had the victim not fought off his assailants, he would probably be dead, and statements it made at the hearing on Shakur's post-sentence motion, including the lack of his remorse, nature of the crime, and his background. ***See*** Trial Court Opinion, 6/17/2024, at 18. "However, a sentencing court's reasons for a particular sentence must be given contemporaneously with the imposition of the sentence. A more extensive explanation in an opinion filed pursuant to Rule 1925(a) will not cure a failure to articulate reasons at the time of sentencing." ***Commonwealth v. Serrano***, 150 A.3d 470, 475 n.7 (Pa. Super. 2016) (citations omitted).

trial court failed to provide reasons for the sentence, and remanding for resentencing).[6, 7]

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins the memorandum.

President Judge Emeritus Panella notes his dissent.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/18/2025

_____

[6] As we are vacating the judgment of sentence and remanding for resentencing, we need not address Shakur's final discretionary sentencing claim.

[7] We observe that at the original sentencing hearing, the trial court imposed a standard range sentence of one to two years in prison at count 44. Sentencing Order, 1/7/2022, at 3. Ostensibly in an effort to impose the same sentence on resentencing, the trial court increased and aggravated this particular sentence to two to four years in prison, but failed to provide reasons for the aggravated sentence. We note that the trial court is free to "duplicate the effect of the original sentencing plan by adjusting the sentences on various counts so that the aggregate punishment remains the same." **Commonwealth v. Conklin**, 275 A.3d 1087, 1095 (Pa. Super. 2022) (citation omitted). In doing so, however, it must adhere to the requirements set forth in the Sentencing Code. **See Morgan**, 258 A.3d at 1159 (noting that record shows the sentencing court failed to "start afresh," and instead "mechanically reimposed the same aggregate sentence without explanation as to why such a sentence was individualized to [a]ppellant").