J-S42026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID W. VAUPEL | : | |
| | : | |
| Appellant | : | No. 612 MDA 2024 |

Appeal from the Judgment of Sentence Entered March 28, 2024
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0003436-2022

BEFORE:  LAZARUS, P.J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                    **FILED MARCH 17, 2025**

David W. Vaupel ("Vaupel") appeals from the judgment of sentence imposed by the Lancaster County Court of Common Pleas ("trial court") following his convictions of criminal mischief, causing a false alarm, and disorderly conduct,[1] all stemming from Vaupel using a lighter to trigger a sprinkler system.  Vaupel raises challenges to evidentiary rulings regarding his inculpatory statement, the sufficiency of evidence supporting his conviction of causing a false alarm, and the amount of restitution imposed.  We affirm.

On July 12, 2022, Motel 6 assistant manager Jami Dejesus ("Dejesus") was working the front desk when the building's alarm system indicated that the sprinkler system in room 315 had triggered.  N.T., 1/18/2024, at 166.

---

[1]  18 Pa.C.S. §§ 3304(a)(5), 4905(a), 5503(a)(4).

This room was registered to Vaupel. *Id.* Simultaneously, another assistant manager, Devin Rea, heard a fire alarm and proceeded to the front desk. N.T., 1/17/2024, at 71. He and other staff then proceeded to Room 315 and saw "a pool of water" coming from the room. *Id.* He knocked on the door but received no response; Rea then used his master key but was only able to open the door about an inch because the deadbolt was engaged. *Id.* Rea was able to see Vaupel, who did not respond to requests to open the door. *Id.* at 73. Hotel staff ultimately had to break the door to gain entry. *Id.* Vaupel "looked as if he was in a daze" and made "very little to no vocal responses" to their questions. *Id.* at 74. Rea estimated that the sprinkler system had been running continuously for approximately ten minutes by that time, and water began "pouring over into the hallway [and] into the adjacent rooms[.]" *Id.* at 75.

Brett Fassnacht ("Fassnacht"), a volunteer firefighter, testified that the hotel's fire alarm system automatically triggers an alert at the fire station. *Id.* at 91. Upon reaching Vaupel's room, Fassnacht attempted to stop the water flow but was unable to do so and had "to resort to just shutting the sprinkler system down[.]" *Id.* at 99. Afterwards, he returned to the room to assess what may have caused the sprinkler to activate. *Id.* Fassnacht explained that a sprinkler has a glass bulb filled with liquid, which contains a filament. *Id.* at 94. If the liquid inside is exposed to a sufficient temperature, the bulb

shatters and breaks the filament.[2] *Id.* In turn, the filament "hold[s] back a sealing assembly … like a little plug. As soon as that glass bulb breaks, it lets that plug drop out … and then the water behind it starts to flow." *Id*. The water then hits a deflector plate, which causes the water to spread out and cover the room. *Id.*

He testified that in a hotel setting, the liquid inside is typically designed to break the bulb if exposed to "150 degrees or so." *Id.* at 95. Fassnacht did not see any indication that the room reached that temperature. *Id.* at 98. He noticed "a scorch mark on the bed, but it was not very big," and did not believe that "it was big enough to cause any kind of sprinkler activation." *Id.* at 95. Their investigation established that there was no fire anywhere in the motel. *Id.* at 103-04.

Terence Burkhardt ("Burkhardt"), a union sprinkler fitter, replaced the sprinkler. *Id.* at 109. He did not see any obvious physical damage such as it having been struck to an "extent where it was physically bent or deformed," but noted "some discoloration," which he explained can "happen[] from the water, but it does also indicate that it was burnt to an extent." *Id.* He discarded the sprinkler and replaced it with a new one. *Id.* at 110.

Dejesus examined the room after the water was shut off and observed multiple lighters, including in the sink. N.T., 1/18/2024, at 168. She saw

_____

[2] The liquid inside "is usually either water and alcohol or water and glycerin … depending on what the sprinkler is being used for." N.T., 1/17/2024, at 94.

- 3 -

ashes and burn marks on the floor. *Id.* Additionally, discarded cigarettes and an ashtray were found in Vaupel's room. *Id.*

Vaupel spoke to Officer Nicholas Zollner that evening and said he had been sleeping when the sprinkler activated. *Id.* at 119. At that time, Officer Zellner did not consider the case a criminal matter. *Id.* at 124. On July 21, 2022, Sergeant Donald Morant of the Lancaster City Police Department was working the front desk when Vaupel entered and asked if there was a warrant for his arrest. N.T., 1/18/2024, at 159. Sergeant Morant asked Vaupel what he was referencing, and Vaupel said "that he was responsible for setting off a fire alarm at the Motel 6." *Id.* Vaupel then stated "that he had a flashback [to] when he was in the war" and had "stood up in the bed with a lighter and put it toward the sprinkler system." *Id.*

Subsequently, police arrested Vaupel and charged him with the above crimes. The case proceeded to trial, after which a jury found Vaupel guilty of all counts. The trial court sentenced Vaupel to one year less a day to two years less a day followed by two years of probation. Following a hearing, the trial court entered a restitution order in the amount of $1,659,645.00. Vaupel timely appealed.

Vaupel raises five issues on appeal:

[I]. Did the trial court err in admitting [Vaupel]'s confession into evidence when the Commonwealth failed to present sufficient corpus delicti prior to the admission of the statement into evidence, in that, prior to admitting the confession, the Commonwealth failed to prove that it was more likely than not that the sprinkler activation was caused by an intentional criminal

- 4 -

act rather than an accident when trial testimony revealed that the sprinkler system could be activated by accidentally bumping the mechanism or hanging something on it?

[II]. Was the evidence presented at trial insufficient to prove any of the crimes alleged in the [i]nformation beyond a reasonable doubt absent [Vaupel]'s confession in contravention of the corpus delicti rule?

[III]. Did the trial court err in permitting the Commonwealth to mention [Vaupel]'s confession in its opening statement when no corpus delicti had been presented at that point?

[IV]. Was the evidence presented at trial insufficient to prove count 2 false alarm to agency of public safety beyond a reasonable doubt, even considering [Vaupel]'s confession?

[V]. Did the trial court err in ordering [Vaupel] to pay an inflated restitution amount which was not supported by sufficient proof?

Vaupel's Brief at 14-15 (reordered for ease of disposition).

Vaupel's first three issues share a common complaint as all involve the corpus delicti rule. "Simply put, the Commonwealth cannot convict a person solely based upon a defendant's confession." *In re T.B.*, 11 A.3d 500, 505 (Pa. Super. 2010). The rule is designed "[t]o avoid the injustice of a conviction where no crime exists," and the "corpus delicti must be proved before a conviction can stand." *Commonwealth v. Leslie*, 227 A.2d 900, 904 (Pa. 1967) (citation omitted). The Commonwealth is therefore required to "present evidence that: (1) a loss has occurred; and (2) the loss occurred as a result of a criminal agency." *Commonwealth v. Taylor*, 831 A.2d 587, 590 (Pa. 2003) (citation omitted). In a property damage case like this one, the Commonwealth must show that the sprinkler system engaged and that it was through criminal means. *See Leslie*, 227 A.2d at 903 ("[T]he corpus delicti

would be established if the Commonwealth were able to show that a burning occurred, and that the burning resulted from the willful or malicious act of someone, i.e., that the fire was of incendiary origin.").

Application of this rule at the trial court level "occurs in two distinct phases." *Commonwealth v. Ahlborn*, 657 A.2d 518, 521 (Pa. Super. 1995). First, the trial court

> must determine whether the Commonwealth has proven the corpus delicti of the crimes charged by a mere preponderance of the evidence. If the court is satisfied that, on the evidence presented, it is more likely than not that a wrong has occurred through criminal agency, then the confession and/or admissions of the defendant are admissible.

*Id.* Preponderance of the evidence is defined as the "greater weight of the evidence," such that it tips the scale even slightly in favor of the Commonwealth. *Commonwealth v. Wayne*, 720 A.2d 456, 468 (Pa. 1998).

In the second phase, the Commonwealth must "prove to the jury's satisfaction beyond a reasonable doubt, the corpus delicti of the crimes charged" for the jury to consider the statement as substantive evidence. *Id.*; *see also Commonwealth v. Reyes*, 681 A.2d 724, 728 (Pa. 1996) (acknowledging distinction between preponderance of evidence standard with respect to admissibility of statement and the beyond a reasonable doubt standard applicable to when the factfinder may consider the statement as evidence the accused committed the crime).

Vaupel first argues his statements were inadmissible under the corpus delicti rule. Vaupel's Brief at 31-34. Vaupel asserts that the trial court abused

its discretion based upon "the uncontradicted testimony of the Commonwealth's witnesses … [that] sprinkler systems can go off by accidental means. [Vaupel]'s statement should never have been admitted into evidence for consideration by the fact finder jury." *Id.* at 34; *see also* N.T., 1/17/2024, at 104 (Fassnacht agreeing that glass bulbs could be broken by damage), 111 (Burkhardt testifying that the glass can break "pretty simply" by using, for example, "a screwdriver or something like that" on the glass).

"The corpus delicti rule is an evidentiary one. On a challenge to a trial court's evidentiary ruling, our standard of review is one of deference." *Commonwealth v. Herb*, 852 A.2d 356, 362–63 (Pa. Super. 2004) (citations omitted). Further, "[t]he corpus delicti … may be established by circumstantial evidence." *Commonwealth v. Shoff*, 417 A.2d 698, 699 (Pa. Super. 1980).

The trial court cited several pieces of circumstantial evidence to support its ruling:

> In the context of criminal mischief - damage to personal property, corpus delicti was established by the Commonwealth through testimony that the sprinkler system was activated through either heat or something physically breaking the bulb and the sprinkler was not able to go off by itself; [Vaupel] was the only person in the room when the sprinkler went off; there was a cigarette lighter, cigarette butts and ashes in the nonsmoking room; there were scorch marks on the bedding which appeared to be fresh, and [Vaupel] refused to open the door to allow staff inside the room.

Trial Court Opinion, 6/3/2024, at 7.

We discern no abuse of discretion in this ruling. That the sprinkler's glass could have been broken by accidental means does not undermine the totality of the circumstances pointing to criminal conduct. *See, e.g., Commonwealth v. Moore*, 353 A.2d 808, 810 (Pa. 1976) (finding that inculpatory statement was properly admitted in arson case even though the expert could not rule out an accidental cause; "[b]ecause arson is rarely committed in the presence of others, circumstantial evidence, even if standing alone, may be used to establish the corpus delicti"); *see also Reyes*, 681 A.2d at 727 ("The corpus delicti, like other facts, may be shown by circumstantial evidence; it is sufficient if these circumstances are consistent with a crime even though they are also consistent with … an accident."). Here, the circumstantial evidence is "more consistent with a crime than with an accident." *Commonwealth v. McMullen*, 681 A.2d 717, 722 (Pa. 1996). Pointedly, eyewitness testimony placed Vaupel in the room shortly after the water started flowing. Additionally, Fassnacht did not observe anything hanging from the sprinkler that would have caused the glass to break innocently, and Burkhardt testified that markings on the sprinkler were consistent with fire damage. Thus, the corpus delicti was established by circumstantial evidence and Vaupel's claim is without merit. *See Commonwealth v. Dewald*, 317 A.3d 1020, 1036 (Pa. Super. 2024) (finding no violation of corpus delicti rule in burglary and attempted kidnapping case; while there were no eyewitnesses to his entry into the home the "totality of

evidence sufficed to prove … an unlawful, uninvited nighttime entry" into victim's residence).

Vaupel's second claim corresponds to the second phase of the corpus delicti inquiry, arguing:

> Even should this Honorable Court find that the statement was properly admitted under the preponderance standard, the corpus delicti evaluation does not end there. Rather, once admitted after a showing of a preponderance, the factfinder shall not consider the statement unless the evidence of a crime has been proven beyond a reasonable doubt.

Vaupel's Brief at 34. Vaupel claims that "[a]bsent [Vaupel]'s confession … there was insufficient evidence to support a conviction at any count of the [i]nformation." *Id.* at 37.

We note that this Court has rejected an attempt to equate the second phase of the corpus delicti rule to the sufficiency of the evidence to support the crimes. *See Commonwealth v. Persichini*, 663 A.2d 699, 701-02, 703 (Pa. Super. 1995) (rejecting claim "that each and every element of the crime must be proved independent of a defendant's admissions and beyond a reasonable doubt before the admissions may be considered by the jury," explaining this "interpretation of the corpus delicti rule … would render his admission superfluous and unnecessary because all elements of the crime have already been proven thereby establishing the defendant's guilt beyond a

reasonable doubt.").[3]  Instead, "it is enough for the Commonwealth to prove beyond a reasonable doubt that the injury or loss is consistent with the crime having been committed."  *Id.* at 702.  We conclude that the circumstantial evidence rises to the level of being "consistent with the crime having been committed."  *Id.*  Thus, Vaupel's claim in this regard is without merit.

Turning to the reordered third issue, Vaupel argues that the trial court violated the corpus delicti rule by allowing, over his objection, the Commonwealth to mention the inculpatory statement during its opening argument.  Vaupel's Brief at 29-31.  He reasons that "[t]his is precisely what the rule is intended to preclude" under the two-step process as the opening argument precedes "any evidence … presented to [the] jury[.]"  *Id.* at 31.

We find no error, as the flaw in Vaupel's claim is that arguments are not evidence.  "The purpose of an opening statement is to apprise the jury how the case will develop, its background and what will be attempted to be proved; but it is not evidence." ***Commonwealth v. Parker***, 919 A.2d 943, 950 (Pa. 2007) (citation omitted).  Thus, prosecutors may refer to evidence that they reasonably anticipate will be established at trial. ***Commonwealth v. Begley***, 780 A.2d 605, 626 (Pa. 2001).  Here, the Commonwealth reasonably

_____

[3] We recognized that a confession would not be redundant in cases where some other disputed fact is relevant, such as identity. ***See Commonwealth v. Persichini***, 663 A.2d 699, 703 n.5 (Pa. Super. 1995) ("For example, a defendant's admission would not be superfluous … [where] the defendant's admission would establish his identity as the perpetrator of the proven crime.").  As in ***Persichini***, identity is not at issue.

- 10 -

anticipated that the statement would be admitted at trial. Vaupel has not established error.

The fourth claim addresses the sufficiency of the evidence to convict him of causing a false alarm. We apply the following principles to such claims:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the [factfinder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the [factfinder].

***Commonwealth v. Rosario***, 307 A.3d 759, 764-65 (Pa. Super. 2023) (citation omitted).

A person commits causing a false alarm "if he knowingly causes a false alarm of fire or other emergency to be transmitted to or within any organization, official or volunteer, for dealing with emergencies involving danger to life or property." 18 Pa.C.S. § 4905(a).

Vaupel's argument subsumes two different theories. Vaupel first complains that the trial court's jury instructions on this count "exclude[d] the language 'or other emergency'" as charged in the information. Vaupel's Brief at 38. He argues that the evidence established that the "alarm [Vaupel]

allegedly caused was for water. … The water emergency was not false, but real." ***Id.***

This is not a challenge to the sufficiency of the evidence but rather to the jury instruction provided. As Vaupel concedes, "[t]he record also does not record a defense objection" to what he maintains is an improper instruction. ***Id.*** Because counsel did not object, any complaint in this regard is waived. ***See*** Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury."); Pa.R.A.P. 302(b) ("Specific exception shall be taken to the language or omission complained of" in a jury instruction to preserve the issue for appellate review.).

Separately, Vaupel argues that the evidence was insufficient to convict regardless, as even accepting that the jury found that he "used a lighter to set off the sprinkler is true, that only amounts to his causing the water alarm" to the Motel 6 system. Vaupel's Brief at 38. He submits that this was a true emergency, and therefore he cannot be found guilty of causing a false alarm. ***Id.***

We disagree. While Vaupel does not cite any caselaw or even address the mens rea component of the statute, we note that the statute states he is guilty "if he knowingly causes a false alarm of fire" to be transmitted. The Crimes Code defines "knowingly" as follows:

A person acts knowingly with respect to a material element of an offense when:

\* \* \*

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S. § 302(b)(2).

Here, the element involves the result: the Commonwealth must show that by triggering the sprinkler with a lighter that he was "practically certain that his conduct" will cause a false fire alarm. That Vaupel triggered a "water alarm" does not detract from the fact that he **also** caused a fire alarm.

In his fifth and final claim, Vaupel challenges the amount of restitution entered by the trial court, arguing that the sentence is both illegal and that the trial court abused its discretion. **See** Vaupel's Brief at 44 ("The restitution order amounts to an illegal sentence and an abuse of discretion[.]"). We conclude that his challenge only implicates the discretionary aspects of his sentence, which he failed to preserve and is therefore waived. **See Commonwealth v. Weir**, 239 A.3d 25, 38 (Pa. 2020).

We briefly recap the evidence supporting the restitution amount. At trial, the Commonwealth called Babu Patel ("Patel"), a Motel 6 manager. He testified that after this incident the motel had to close for "at least ten or twelve months" for repairs. N.T., 1/18/2024, at 181. The Commonwealth elicited that repairs were ongoing, and that Patel's insurance carrier paid "over two million dollar[s]," **id.** at 183, which the Commonwealth supported with an

exhibit described as an invoice paid by Motel 6 in the amount of $1,659,645. *Id.* at 185. Patel indicated that he anticipated the total amount would reach over $4,000,000. *Id.* at 190.

At the restitution hearing, both Patel and Vaupel failed to appear.[4] The Commonwealth requested "to incorporate the record from the jury trial" and the trial court referenced the previous exhibit, describing it as "a quote for an estimate for a bill from Integrity CMS Incorporated, who allegedly did the work on the hotel[.]" N.T., 3/28/2024, at 3. Notably, Vaupel's counsel did not object to this incorporation and accepted that this document was relevant to the restitution amount. *Id*. Vaupel separately admitted an additional document from discovery, "the itemized list from the complete Integrity documents," for the court's consideration. *Id.* Counsel argued that the itemized list indicated that the renovations were for the entire motel, and included items which could not possibly have been caused by the water damage, such as over 100 new beds, sinks, refrigerators, telephones, and televisions. *Id.* at 6.

Vaupel argued that the documents indicated that Patel ordered at least 100 of each item, which suggests that 100 rooms were damaged by the water. Per Vaupel's argument, "I think it hit a couple on the third floor and trickled down, but it certainly wasn't 100 [rooms]." *Id.* Vaupel also argued that "Patel

_____

[4] Vaupel's attorney informed the court that Vaupel was living in a community facility and knew about the proceeding.

- 14 -

used this as an opportunity to renovate his hotel," as it is not clear why the refrigerators and televisions had to be entirely replaced. *Id.* The Commonwealth agreed in part, responding, "I do not believe every single thing here is reflective of the damage that ... Vaupel caused. For example, as [counsel] said, the sinks, bathtubs, I think it's common sense that water would not damage" those items. *Id.* at 8. The Commonwealth suggested subtracting $179,831 from the $1,659,645 total. *Id.*

We recently addressed a claim similar to this one in ***Commonwealth v. Rapp***, --- A.3d ----, 2025 WL 286595 (Pa. Super. 2025). There, Rapp pleaded guilty to diverting natural gas from a pipeline from 2008 through 2021. *Id.* at 1. The Commonwealth sought approximately $1,700,000 in restitution. *Id.* at *2. The trial court accepted testimony and documentation from the gas company's employee, who offered documentary evidence calculating, based on meter readings, the amount lost during the time of Rapp's diversion. *Id.*

On appeal, Rapp alleged that the sentence was speculative and illegal on that basis, arguing, in part, that the gas loss was attributable to other causes like natural leakage. *Id.* at *6. We concluded that his arguments implicated the discretionary aspects of his sentence, not its legality. *Id.* "Cases in which a restitution award is deemed illegal as speculative, typically arise when the crime has no obvious connection to the restitution." *Id.* (collecting cases). We noted that "Rapp does not develop an argument that

- 15 -

his **conduct** is unconnected to the loss, only that the loss that flowed from his proven conduct was not sufficiently established. That allegation has no bearing on the legality of the restitution component of his sentence …." ***Id.*** (emphasis in original). Therefore, such a claim challenges the discretionary aspects of sentencing. ***Id.***

Notwithstanding our skepticism and the paucity of evidence supporting the full restitution amount, we are constrained to conclude that the same logic applies here and Vaupel's claim challenges the discretionary aspects of his sentence.[5] Vaupel conceded that the water pooled and leaked down to other rooms, causing damage. This supplies the necessary causal link between the conduct and the damage. Pointedly, Vaupel did not argue that the exhibits referenced by the trial court were irrelevant to this calculation. He argued only that the trial court should not have credited the full amount, which goes to the trial court's discretion.

> The right to appellate review of the discretionary aspects of a sentence is not absolute and must be considered a petition for permission to appeal. To invoke this Court's jurisdiction to review a challenge to the discretionary aspects of a sentence, an appellant must satisfy a four-part test:

---

[5] As noted, the court accepted documentary evidence submitted by the Commonwealth without a detailed explanation addressing how it arrived at this number. We are troubled by the fact that Patel did not appear to explain the amounts. Furthermore, the trial court rejected the Commonwealth's acknowledgment that at least $179,831 was not supported, as it imposed the full $1,659,645 amount submitted at trial. While the trial court is not required to accept the Commonwealth's concession, the fact that the prosecution requested a lower amount is a relevant consideration. Nonetheless, these issues are all germane only to the trial court's discretionary authority.

(1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Rivera*, 312 A.3d 366, 376-77 (Pa. Super. 2024) (citations, quotation marks, and brackets omitted).

Vaupel neither objected at the restitution hearing nor filed a post-sentence motion. Accordingly, he has waived his discretionary aspect of sentencing claim. *Rapp*, 2025 WL 286595 at *6 (stating that discretionary sentencing claims must be preserved in a post-sentence motion or at the hearing).

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/17/2025