J-A02041-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN ANTHONY WATTS | : | |
| | : | |
| Appellant | : | No. 465 WDA 2025 |

Appeal from the Judgment of Sentence Entered March 4, 2025
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000241-2024

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN ANTHONY WATTS | : | |
| | : | |
| Appellant | : | No. 466 WDA 2025 |

Appeal from the Judgment of Sentence Entered March 4, 2025
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0002469-2023

BEFORE:  STABILE, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED: APRIL 24, 2026**

John Anthony Watts ("Watts") appeals from the judgments of sentence entered by the Blair County Court of Common Pleas ("trial court") following his convictions of three counts each of criminal use of a communication facility; manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance ("PWID"); simple possession of a controlled or

counterfeit substance; and use or possession of drug paraphernalia.[1] On appeal, Watts challenges the sufficiency and weight of the evidence presented to support his convictions as well as the legality and discretionary aspects of his sentence. Upon review, we affirm.

On three dates in early 2022, Watts sold controlled substances to a confidential informant ("C.I.") who was working with the Pennsylvania State Police. Trooper Michael McCullough, assigned to a vice unit that included drug investigations, oversaw the operation. N.T., 8/7/2024, at 37, 44. Trooper McCullough has extensive training in undercover operations, managing confidential informants, conducting drug investigations, and drug identification, packaging, delivery, concealment, and "street slang." *Id.* at 37-38. To arrange the controlled buys, the C.I., in Trooper McCullough's presence and with the trooper's assistance, communicated with Watts (who is also known as "Sosa") through Snapchat.[2] *Id.* at 46-47, 49-64,

_____

[1] 18 Pa.C.S. § 7512(a); 35 P.S. §§ 780-113(a)(16), (30), (32). At lower court docket number CP-07-CR-0002469-2023 ("2469-2023"), a jury convicted Watts of two counts each of criminal use of a communication facility, PWID, simple possession, and use or possession of drug paraphernalia. At lower court docket number CP-07-CR-0000241-2024 ("241-2024"), a jury convicted Watts of one count each of criminal use of communication facility, PWID, simple possession, and use or possession of drug paraphernalia. This Court consolidated the above-referenced appeals sua sponte on May 28, 2025.

[2] Snapchat is a communication application, typically used on a cellular phone, that automatically deletes messages that users send and receive, making it a common application for communication in illegal activities. N.T., 8/8/2024, at 203; N.T., 8/7/2024, at 50. Trooper McCullough took pictures of the Snapchat
*(Footnote Continued Next Page)*

Commonwealth Ex. 1. Trooper McCullough directly observed the Snapchat messages between the C.I. and Watts; for their Snapchat video calls, Trooper McCullough listened to their conversations but was out of Watts' sight line. *Id.* at 50-56, 58, 62, 73-74, 105, 124. For each of the three incidents, Trooper McCollough provided the C.I. with $900.00 in prerecorded state-issued buy money to make the drug purchases, and police searched the C.I. and his vehicle just before and after each transaction. N.T., 8/8/2024, at 83-84; N.T., 8/7/2024, at 50, 56, 65, 67-68, 71-72, 105-106, 108-110, 124-26, 129-30, Commonwealth Exs. 2, 7, 11.

The first buy occurred on January 27, 2022. N.T., 8/7/2024, at 44. Watts directed the C.I. to meet at a hotel in Altoona, Pennsylvania. *Id.* at 74. The C.I. drove his own vehicle while Trooper McCullough, along with a state police corporal, followed in an undercover vehicle and parked within sight of the C.I. *Id.* at 74-76. Trooper Matthew Schatzmann received a photograph of Watts and set up surveillance at the hotel before the C.I. arrived. N.T., 8/8/2024, at 91-92; N.T., 8/7/2024, at 74-75. Police monitored the C.I. from their respective locations. N.T., 8/7/2024, at 72, 77-78. Both troopers observed a black male approach the driver's side of the C.I.'s vehicle, engage

_____

messages on the C.I.'s phone that were between the C.I. and Watts. N.T., 8/8/2024, at 37-38; N.T., 8/7/2024, at 50, 58, Commonwealth Ex. 1. Pursuant to a search warrant for the Snapchat account with the unique identifier of "Vampin_Sosa," Trooper McCullough confirmed the account belonged to Watts and obtained its geolocation data and photographs of Watts. N.T., 8/8/2024, at 20-28, Commonwealth Exs. 14-17.

in a brief conversation with the C.I., enter a separate vehicle, and drive away with the C.I.'s vehicle following. N.T., 8/8/2024, at 93-94; N.T., 8/7/2024, at 78. Trooper Schatzmann identified Watts from the photograph as the black male who approached the C.I.'s vehicle. N.T., 8/8/2024, at 93-94, 97. The troopers followed the two vehicles until they pulled into a gas station that was under major construction and had no other vehicles or people present; police did not enter the gas station because there was no room to pull in and it likely would have blown their cover.[3] N.T., 8/8/2024, at 95-96; N.T., 8/7/2024, at 79-81. Trooper Schatzmann pulled over on the side of the road just prior to the gas station; from his vantage point, he could see the station's entrance but neither the C.I.'s nor Watts' vehicles. N.T., 8/8/2024, at 95-96, 99, 101-03. He did not observe any other vehicles or people enter or exit the gas station while the C.I. and Watts were there. *Id.* at 102. Trooper McCullough drove around the block and approximately one to two minutes later arrived back at the gas station just as the same two vehicles were exiting. N.T., 8/8/2024, at 100; N.T., 8/7/2024, at 81-82. He followed the C.I.'s vehicle to a mutually agreed upon location. N.T., 8/7/2024, at 81-82. Upon searching the C.I. and his vehicle, Trooper McCullough recovered from the center

_____

[3] The gas station was surrounded by a chain link fence, had a deep hole in the ground from removing underground fuel tanks, and had heavy equipment on site. N.T., 8/8/2024, at 42-43. The C.I. and Watts' vehicles pulled into the gas station parallel to each other, outside of the fenced area. *Id.* at 42, 50.

console of the vehicle six bricks of fentanyl.[4]  N.T., 8/8/2024, Commonwealth Ex. 28; N.T., 8/7/2024, at 85-86, Commonwealth Exs. 3-5.

The second buy took place on February 7, 2022.  N.T., 8/7/2024, at 103, 105.  Trooper McCullough instructed the C.I. to complete the transaction only at the location designated by Watts.  *Id.* at 109.  During a Snapchat video call, Watts instructed the C.I. to meet him at a lounge in Altoona, Pennsylvania; Trooper McCullough observed and heard Watts on this video call as he sat in the passenger seat of the C.I.'s vehicle.  *Id.* at 111-12. Corporal Nathan Owens received a photograph of Watts[5] and set up surveillance at the lounge lot before the C.I. arrived.  N.T., 8/8/2024, at 106-08; N.T., 8/7/2024, at 112-13.  The C.I. drove his vehicle to the lounge while Trooper McCullough followed in an undercover vehicle; when the trooper arrived at the lounge, he stationed himself in a separate, elevated lot where he could observe the lounge's parking area.  N.T., 8/7/2024, at 114-15. Trooper McCullough and Corporal Owens observed a light blue-gray sedan pull alongside the C.I.'s vehicle; they saw a white male driver and Watts in the

---

[4] Police believed the substance to be heroin, but subsequent laboratory testing showed it was fentanyl, with some samples testing positive for fentanyl and a small amount of cocaine.  N.T., 8/8/2024, at 161-64, Commonwealth Exs. 6, 28; N.T., 8/7/2024, at 86, 95-96.

[5] After the January 27, 2022 controlled buy, police positively identified Watts by obtaining his state identification card and recent photographs of him.  N.T., 8/8/2024, at 60; N.T., 8/7/2024, at 112-13.

passenger seat of the sedan. N.T., 8/8/2024, at 109-10, 114; N.T., 8/7/2024, at 115. They watched Watts exit the sedan, enter the passenger side of the C.I.'s vehicle and remain there for less than one minute, exit the C.I.'s vehicle, return to the sedan, and drive away. N.T., 8/8/2024, at 111-12; N.T., 8/7/2024, at 115-16. Trooper McCullough followed the C.I. to a prearranged location. N.T., 8/7/2024, at 115-16. Trooper McCullough searched the C.I. and his vehicle, recovering from the center console of the vehicle six bricks of fentanyl.[6] N.T., 8/8/2024, Commonwealth Ex. 29; N.T., 8/7/2024, at 117-18, Commonwealth Exs. 8-9.

The third buy occurred on February 18, 2022. N.T., 8/7/2024, at 123. The C.I. drove his vehicle while Trooper McCullough followed in an undercover vehicle to a restaurant in Ebensburg, Pennsylvania, which was the meeting location designated by Watts. *Id.* at 126-27. When Trooper McCullough arrived, Watts was standing in the parking lot; the trooper drove right past him and parked a short distance away. *Id.* at 128. Trooper McCullough observed Watts enter the passenger side of the C.I.'s vehicle, exit less than one minute later, and walk across the parking lot. *Id.* at 128-29. Trooper McCullough followed the C.I.'s vehicle to a prearranged location. *Id.* at 128-29. Upon search of the C.I. and his vehicle, Trooper McCullough recovered from the center console of the vehicle a knotted, clear plastic bag containing

---

[6] *See* note 4, *supra*; N.T., 8/8/2024, at 164, 171, Commonwealth Exs. 10, 29.

a white powder,[7] which was later tested and determined to be fentanyl.  N.T., 8/8/2024, Commonwealth Ex. 30; N.T., 8/7/2024, at 129-31, Commonwealth Ex. 12.

Based on the foregoing, the Commonwealth charged Watts as detailed above at lower court docket number 2469-2023, stemming from the January 27 and February 7, 2022 incidents, and lower court docket number 241-2024, stemming from the February 18, 2022 incident.

The two dockets were joined for trial.  Following a three-day trial in August 2024, a jury convicted Watts of all charges.  The trial court ordered a presentence investigation ("PSI") report.  The parties appeared for a sentencing hearing on both dockets on March 4, 2025.  The trial court sentenced Watts to an aggregate term of sixteen to thirty-two years of incarceration.[8]  On March 26, 2025, the trial court denied Watts' timely post-sentence motions.  This timely appeal followed.

_____

[7] Though packaged differently, the amount of fentanyl was approximately the same as the prior two transactions.  *Id.* at 134-35.  Police believed the substance to be fentanyl or cocaine; subsequent laboratory testing confirmed it was fentanyl.  N.T., 8/8/2024, at 71, 176; Commonwealth Exs. 13, 30; N.T., 8/7/2024, at 133-34.

[8] Specifically, on lower court docket number 2469-2024, the trial court sentenced Watts as follows: count 1 (criminal use of communication facility) – 12 to 24 months of incarceration to run consecutively to count 3; count 2 (criminal use of communication facility) – 12 to 24 months of incarceration to run concurrently to count 1; count 3 (PWID) – 60 to 120 months of incarceration; count 4 (PWID) – 60 to 120 months of incarceration to run consecutively to counts 1 and 3; counts 5 and 6 (simple possession) – no
*(Footnote Continued Next Page)*

Watts presents the following issues for our review:

[1.] Whether the Commonwealth presented sufficient evidence to support the conviction as there was no direct testimony concerning any drug transaction between the confidential informant and [Watts].

[2.] Whether the verdict was against the weight of the evidence, in light of the fact that there was no direct testimony as the confidential informant failed to appear to testify at trial, and the only testimony presented was from the Pennsylvania State Police Officers.

[3.] Whether the trial court erred by ordering consecutive sentences for both [lower court dockets] when the incidents were clearly one course of conduct as the events took place within ten days of each other, with the same informant, and same police department.

[4.] Whether the trial court failed to consider any mitigating factors that were presented at the sentencing hearing when fashioning its sentence.

Watts' Brief at 5-6 (suggested answers omitted).[9]

---

further penalty; counts 7 and 8 (use or possession of drug paraphernalia) – no further penalty.

On lower court docket number 241-2024, the trial court sentenced Watts as follows: count 1 (PWID) – 60 to 120 months of incarceration to run consecutively to all other terms of incarceration imposed; count 2 (criminal use of communication facility) – 12 to 24 months to run concurrently to all other terms of incarceration imposed; count 3 (simple possession) – no further penalty; and count 4 (use or possession of drug paraphernalia) – 1 year term of reentry supervision under Title 61 of the Prisons and Parole Code, 61 Pa.C.S. §§ 101-7301, to run consecutively to all terms of incarceration imposed. The trial court further imposed costs, fines, and restitution and awarded Watts credit for time served.

[9] We note with disapproval that the Commonwealth failed to file an appellate brief.

## Sufficiency of the Evidence

In his first issue, Watts argues that the Commonwealth failed to present sufficient evidence to sustain his convictions. Watts' Brief at 17-25. He contends that the evidence was insufficient because there was no direct evidence linking Watts to the drugs recovered in the three incidents, such as testimony of the C.I., photographs, or fingerprints. *Id.* at 17, 23-25. Watts acknowledges that the evidence may be entirely circumstantial, but maintains that the circumstantial evidence presented at trial did not link him to the crimes beyond a reasonable doubt. *Id.* at 23.

Before addressing the merits of this claim, we note that Watts failed to identify which of his twelve convictions he challenges the sufficiency of the evidence. *See id.* at 5 ("Whether the Commonwealth presented sufficient evidence to support the conviction as there was no direct testimony concerning any drug transactions between the [C.I.] and [Watts]."), 17-25; Pa.R.A.P. Rule 1925(b) Statement, 5/1/2025, ¶ 1.a. (same).

"[T]o preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Boyer*, 347 A.3d 689, 699 (Pa. Super. 2025) (quotation marks and citations omitted). "Such specificity is of particular importance in cases where the appellant was convicted of multiple crimes, each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Boyer*, 347 A.3d at 699 (ellipsis,

- 9 -

brackets, quotation marks, and citation omitted). "Specificity prevents the trial court from having to act as counsel for appellant and try to anticipate, guess, or predict what appellant wanted to appeal." ***Id.*** (brackets, quotation marks, and citation omitted).

Ordinarily, Watts' failure to identify in his Rule 1925(b) statement the specific crimes he is challenging for insufficient evidence results in waiver. ***See id.*** The trial court noted Watts' failure in this regard but addressed the merits of whether there was sufficient evidence of Watts' PWID convictions, citing Watts' post-sentence motion (which included a brief description of his sufficiency claim theory that there was no direct evidence linking Watts to the possession and delivery of the drugs). ***See*** Trial Court Opinion, 6/6/2025, at 8-9.

Although Watts' Rule 1925(b) statement should have specified which convictions he sought to challenge, we decline to deem his entire sufficiency claim waived as the trial court was able to discern and address its merits as related to his PWID convictions. ***Cf. Commonwealth v. Laboy***, 936 A.2d 1058, 1060 (Pa. 2007) (remanding to this Court to conduct merits review of a sufficiency claim where the case was relatively straightforward, the record was not overly burdensome, and the trial court readily apprehended the claim and addressed it in its opinion). However, to the extent Watts challenges the sufficiency of the evidence of his remaining convictions, we deem any such claims waived.

Turning to the merits, the following principles guide our review of Watts'

sufficiency claim:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the factfinder to determine the weight to be accorded to each witness' testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

***Commonwealth v. Kling***, 351 A.3d 1274, 1280-81 (Pa. Super. 2026)

(brackets, quotation marks, and citation omitted).

In relevant part, section 13(a)(30) of the Controlled Substance, Drug,

Device and Cosmetic Act ("Drug Act"), commonly known as PWID, prohibits a

person not registered under the Drug Act from engaging in "manufacture,

delivery, or possession with intent to manufacture or deliver, a controlled

substance." 35 P.S. § 780-113(a)(30).[10] "To sustain a conviction for PWID,

the Commonwealth must prove both the possession of the controlled

substance and the intent to deliver the controlled substance."

---

[10] Act of April 14, 1972, P.L. 233, No. 64, § 13, as amended.

***Commonwealth v. Bernard***, 218 A.3d 935, 943 (Pa. Super. 2019) (quotation marks and citation omitted).

The trial court found sufficient evidence supported Watts' three PWID convictions. ***See*** Trial Court Opinion, 6/6/2025, at 10-13. We discern no error. As detailed above, the record reflects that in January and February 2022, under the supervision, assistance, and observation of Trooper McCullough, the C.I. contacted Watts via Snapchat messages and video calls to arrange undercover drug buys from Watts on January 27, 2022, February 7, 2022, and February 18, 2022. N.T., 8/7/2024, at 37, 44-47, 49-64, 73-74, 105-06, 111-12, 123-24, Commonwealth Exs. 1, 14-17. During these communications, Watts directed the C.I. to a different meeting location on each of the three dates. ***Id.*** at 74, 111-12, 126-27. Police searched the C.I.'s person and vehicle just before he traveled to each of the three meeting locations and police had the C.I. under constant surveillance. N.T., 8/8/2024, at 112; N.T., 8/7/2024, at 65, 67-68, 73, 77-78, 105-106, 108-09, 113-16, 123-29.

The record further demonstrates that on each date at issue, Trooper McCullough followed the C.I. into a parking lot at the meeting locations. N.T., 8/7/2024, at 74-76, 112-15, 126-28. Police identified Watts all three times based on Watts' driver's license, recent social media photographs, his conspicuous tattoos, and known recordings of his voice. N.T., 8/8/2024, at 24, 27-28, 63, 93-94, 97, 107, 109-10, Commonwealth Ex. 15; N.T.,

8/7/2024, at 74-75, 112-13. On January 27, 2022, police observed Watts approach the C.I.'s vehicle and after a brief conversation, the C.I. and Watts left in separate vehicles and drove to a gas station under construction that had no other cars or people present; within minutes, police witnessed the two vehicles exiting. N.T., 8/8/2024, at 93-96, 97, 99, 100-03; N.T., 8/7/2024, at 78-82. During the two interactions in February 2022, police witnessed Watts approach and enter the C.I.'s vehicle and after approximately one minute, exit the C.I.'s vehicle, return to his own vehicle, and drive away. N.T., 8/8/2024, at 111; N.T., 8/7/2024, at 115-16, 128-29.

In addition, the record shows that, on each of the three dates at issue, immediately following the transaction, Trooper McCullough followed the C.I. to a prearranged location and upon search of the C.I.'s vehicle, recovered suspected controlled substances, which were later tested and confirmed to be fentanyl. N.T., 8/8/2024, at 161-64, 171, Commonwealth Exs. 28-30; N.T., 8/7/2024, at 81-82, 85-86, 115-18, 128-31, Commonwealth Exs. 3-5, 8-9, 12. Further, the search after each controlled buy revealed that the C.I. no longer possessed the prerecorded money that police had supplied to him. N.T., 8/7/2024, at 85, 108, 129.

Finally, the record reflects that the Commonwealth presented expert testimony and evidence of cellular analysis and geolocation data from Watts' Snapchat account, which placed Watts' phone in close proximity to the

controlled buy locations on the dates and times they occurred. N.T., 8/8/2024, at 207-19, 228, Commonwealth Ex. 31.

Viewing the evidence admitted at trial, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as verdict winner, we conclude that there was sufficient evidence for the jury to determine that Watts, on three separate occasions, possessed and delivered a controlled substance to the C.I. *See Commonwealth v. Ellison*, 213 A.3d 312, 318-20 (Pa. Super. 2019) (holding sufficient evidence supported jury's guilty verdict for PWID where a C.I. did not testify at trial but record showed appellant arranged via text messages and calls with the C.I., who was under the supervision of police, to meet in a store parking lot on three separate dates to deliver cocaine; police searched the C.I. and his vehicle just before and after each transaction; police witnessed the C.I. enter the appellant's vehicle and exit a short time later; and police recovered cocaine from the C.I. immediately following each transaction).

**Weight of the Evidence**

In his second issue, Watts argues that the jury's verdict was against the weight of the evidence. Watts' Brief at 26-27. He relies upon the same arguments he made in support of his sufficiency claim and contends that the verdict should have shocked the trial court's conscience because "there was no testimony in the record that placed these drugs in the possession of" Watts. *Id.* at 26.

We review Watts' weight claim mindful of the following:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. Thus, to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague, and uncertain that the verdict shocks the conscience of the trial court.

> On appeal, our review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim, and we do not consider the underlying question of whether the verdict is against the weight of the evidence.

*Kling*, 351 A.3d at 1289 (brackets, quotation marks, and citations omitted).

We first note that Watts fails to develop his weight claim in his brief before this Court. He fails entirely to discuss the trial court's ruling on his weight claim, explain how the trial court abused its discretion, or cite to any law in support of his argument. *See* Pa.R.A.P. 2119(a) (stating that the argument section of an appellate brief must include "such discussion and citation of authorities as are deemed pertinent"). Instead, as stated, he simply recycles his challenge to the sufficiency of the evidence, wholly failing to recognize the difference between the two claims. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2020) (stating sufficiency of evidence claims are distinct from weight of evidence claims and explaining their

differences). We therefore deem Watts' challenge to the weight of the evidence waived. ***See Commonwealth v. Sexton***, 222 A.3d 405, 416 (Pa. Super. 2019) (concluding the appellant waived his challenge to the weight of the evidence where his brief conflated weight and sufficiency claims and did not otherwise develop the weight claim).

Even if not waived, we find no basis to disturb the trial court's decision that the verdict did not shock its conscious. In support of its decision that the verdict was not against the weight of the evidence, the trial court explained:

> Watts contends the [C.I.] did not testify at trial and the only evidence produced was testimonial from law enforcement. In his post-sentence averments, Watts attempted to raise doubt that Watts was with another male on [the January 27, 2022 incident] and therefore, the drug for money exchange cannot be imputed to Watts.

> \* \* \*

> Here, the [gas station] construction site had heavy machinery[.] Trooper McCullough observed the [C.I.'s] vehicle park directly next to the black male's vehicle, which Trooper Schatzmann identified being Watts. Trooper McCullough did not park in the gas station because it was too risky. He drove down the street and looped back quickly while Trooper Schatzmann surveilled the C.I. from a space he stationed nearby. Trooper Schatzmann also testified there was no one else in the construction site, only Watts, his companion[,] and the [C.I.].

> Additionally, in all three buys from the [C.I.], Watts was the constant, fixed value. At least [o]n one occasion Watts was with someone else. Yet, the arrangements were made through Watts' Snapchat account using his unique identifier, Vampin_Sosa, and the Commonwealth presented testimony of each of the troopers that observed Watts first hand.

> Watts basically asked th[e trial c]ourt to re-weigh the evidence and assess the credibility of the witness[es] presented

- 16 -

at trial, an undertaking that is beyond th[e trial court's] scope of review. Our Supreme Court has clearly stated that the trial judge does not sit as a thirteen juror.

Further, Watts' argument is unpersuasive that the verdict is against the weight of the evidence. Watts' claims cannot be reconciled in light of the evidence presented. Before each controlled buy, the [C.I.] and his vehicle were searched and, after Watts' presence during the illegal transactions, the [C.I.] and his vehicle were searched again. The contraband discovered was consistent with the negotiations between Watts and the [C.I.,] which occurred in presence of Trooper McCullough…. The jury was free to weigh the testimony, including the fact that the [C.I.] had been stopped [by police] prior to his cooperation [with police] with large amounts of narcotics. The jury was free to accept or reject Watts' challenges to the Commonwealth's choice to not call the [C.I.] to the stand. Simply put, th[e trial c]ourt does not find the verdicts contrary to the evidence so as to shock one's conscience. Therefore, th[e trial c]ourt denied Watts' post sentence motions.

Trial Court Opinion, 6/6/2025, at 14-16 (party designation and paragraphing altered). Based on the foregoing, even if Watts had not waived his weight claim, we would discern no abuse of the trial court's discretion.

## Legality of Sentence

In his third issue, Watts argues that the trial court should not have sentenced him consecutively on his PWID convictions because they "should have all merged in that they were all one course of conduct." Watts' Brief at 27. He contends that the first two incidents (on January 27, 2022, and February 7, 2022) were one course of action because they were filed under the same criminal complaint and information. *Id.* As for the third incident (on February 18, 2022), he argues that the police considered it to be the same course of conduct as the other two incidents because, even though it took place in Cambria County, the charges were filed in Blair County with the other

two incidents. *Id.* at 27-28. Although he acknowledges that there were three separate transactions on three different dates, Watts maintains that they should be treated as "one criminal episode" because they occurred on dates in close proximity; involved the same C.I., affiant, drug deliveries, and investigating troopers; and were filed in the same county. *Id.* at 29. He therefore argues that the trial court erred in sentencing him to separate PWID sentences. *Id.*

"A claim that two crimes should have merged for sentencing purposes implicates the legality of the sentence." *Commonwealth v. Dewald*, 317 A.3d 1020, 1043 (Pa. Super. 2024) (citation omitted).

> A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. Accordingly, our standard of review is plenary. The merger doctrine is essentially a rule of statutory construction designed to determine whether the legislature intended for the punishment of one offense to encompass that for another offense arising from the same criminal act or transaction.

*Commonwealth v. Roberts*, 133 A.3d 759, 773 (Pa. Super. 2016) (quotation marks and citation omitted). Under the Judicial Code, "no crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S. § 9765. "Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense." *Id.*; *see also Dewald*, 317 A.3d at 1043 ("Section 9765 prohibits merger unless two distinct facts are present: 1) the

crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other.") (citation omitted).

> When considering whether there is a single criminal act or multiple criminal acts, the question is not whether there was a break in the chain of criminal activity. The issue is whether the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, [and if so,] the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

*Dewald*, 317 A.3d at 1043 (quotation marks and citations omitted).

In its opinion, the trial court determined that Watts' PWID convictions did not merge for sentencing purposes because they did not arise from a single criminal act. *See* Trial Court Opinion, 6/6/2025, at 17. We agree. Each of the three PWID convictions was based on separate and distinct criminal acts: different communications and arrangements between the C.I. and Watts via Snapchat, different delivery dates, different meeting locations, different drug packaging, and different prerecorded state-issued buy funds. For each of Watts' PWID convictions, the record shows that he committed separate criminal acts beyond what was necessary to establish the elements of his other PWID convictions. *See Dewald*, 317 A.3d at 1043. Accordingly, we conclude that Watts' possession and delivery of a controlled substance on January 27, 2022, February 7, 2022, and February 18, 2022, did not constitute a single criminal act and therefore he cannot satisfy the merger doctrine under section 9765. This issue merits no relief.

**Discretionary Aspects of Sentencing**

In his final issue, Watts argues that the trial court abused its discretion by imposing a "manifestly unreasonable" sentence of consecutive terms and failing to consider mitigating factors—the evidence presented by Watts' mother and aunt—when fashioning his sentence. Watts' Brief at 11, 30-31. This argument implicates the discretionary aspects of his sentence. **_See Commonwealth v. Caldwell_**, 117 A.3d 763, 769-70 (Pa Super. 2015) (en banc).

There is "no absolute right to appeal when challenging the discretionary aspect of a sentence." **_Commonwealth v. Crump_**, 995 A.2d 1280, 1282 (Pa. Super. 2010). To invoke this Court's jurisdiction, Watts must satisfy the following four-part test:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); (4) the appellant raises a substantial question for our review.

**_Commonwealth v. Rivera_**, 312 A.3d 366, 376-77 (Pa. Super. 2024) (quotation marks, brackets, and citation omitted). A substantial question is determined on a case-by-case basis and exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing

process." **Commonwealth v. McCain**, 176 A.3d 236, 240 (Pa. Super. 2017) (quotation marks and citation omitted).

Here, Watts filed a timely appeal, he preserved his claim by raising it in a post-sentence motion, and his brief contains a Rule 2119(f) statement. Accordingly, we proceed to determine whether Watts raised a substantial question for our review. **See Rivera**, 312 A.3d at 376-77.

An excessive sentence claim raised in conjunction with an assertion that the court failed to consider mitigating factors generally raises a substantial question. **See Commonwealth v. Snyder**, 289 A.3d 1121, 1126 (Pa. Super. 2023) (citation omitted). Watts, however, has done little more than make a bald assertion that this is the case with respect to his sentence. **See** Watts' Brief at 11, 30-31. Although couched as a challenge to the discretionary aspects of his sentence, Watts' claim that the consecutive nature of his sentences resulted in an excessive sentence is based upon his argument that his PWID convictions merged because they constituted one course of conduct, as discussed above. **See id.** at 11, 27-30. As we have already found, this argument goes to the legality of Watts' sentence, not its discretionary aspects, and is one that is meritless under the facts of this case. **See Dewald**, 317 A.3d 1020, 1043. Thus, Watts' discretionary sentencing claim rests solely on his argument that the trial court failed to consider mitigating factors when it imposed its sentence.

"[A] claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." ***Commonwealth v. Dortch***, 343 A.3d 298, 310 (Pa. Super. 2025) (quotation marks and citation omitted). Accordingly, Watts fails to invoke this Court's jurisdiction to review his discretionary sentencing claim.

Nonetheless, even if Watts raised a substantial question for our review, we would conclude that he is not entitled to relief. Our standard of review is well established:

> Imposition of sentence is vested in the discretion of the sentencing court and will not be disturbed by an appellate court absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. To constitute an abuse of discretion, a sentence must either exceed the statutory limits or be … manifestly excessive.

***Commonwealth v. Hunzer***, 868 A.2d 498, 514 (Pa. Super. 2005) (quotation marks and citations omitted). In addition to the abuse of discretion standard, our review is confined by section 9781(c) and (d) of the Sentencing Code:

> **(c) Determination on appeal.--**The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

- 22 -

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

**(d) Review of record.--**In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(c), (d).

If the trial court was informed by a PSI report, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed."[11]  *Commonwealth v. Miller*, 275 A.3d 530, 535 (Pa. Super. 2022) (quotation marks and citation omitted); *see also Commonwealth v. Rhoades*, 8 A.3d 912, 919 (Pa. Super. 2010) (stating that where "the sentencing court had the benefit of a [PSI] report, we can assume the

_____

[11] The sentencing factors include "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."  42 Pa.C.S. § 9721(b).  "The balancing of these [s]ection 9721(b) sentencing factors is within the sole province of the sentencing court." *Commonwealth v. Baker*, 311 A.3d 12, 19 (Pa. Super. 2024) (citation omitted).

sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors") (quotation marks and citation omitted).

Watts baldly asserts that the trial court failed to consider mitigating factors. The extent of his discretionary sentencing argument spans less than one page, contains no citation to authorities, and the basis for his claim merely states that the trial court failed "to consider the strong mitigating evidence presented by [Watts'] mother and aunt on behalf of [Watts]." Watts' Brief at 30. He does not specify what that evidence was, nor does he present us with any argument as to why the sentence imposed by the trial court evinces a failure to consider such evidence. Thus, we could deem his argument waived based upon its lack of development in his brief. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (stating "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived"); *see also* Pa.R.A.P. 2119(a).

In any event, his claim is belied by the record. The record reflects that at the sentencing hearing, the trial court specifically remarked, after hearing testimony from Watts' mother and aunt, that it found it significant that his family was there to support him, and took an active interest in the mitigation testimony presented. N.T., 3/4/2025, at 53. The trial court asked Watts' mother questions about Watts' relationship with his seven children, his

upbringing, his mother's incarceration for eight years starting when Watts was five years old, the absence of his father in his life, his time in foster care, his failure to obtain his high school degree, and the age he started to get in trouble with the law. *Id.* at 33-34, 36-38. His mother further testified to how she had changed her life after her incarceration, had not been arrested since, and was working for the State of New York as a mental health and substance abuse case manager. *Id.* at 32.

The trial court also heard testimony from Watts' aunt, who testified that Watts was staying with her before the instant charges were filed and he was attempting to find a job. *Id.* at 40-43. The trial court further acknowledged its receipt of two defense letters on Watts' behalf and made them a part of the record. *Id.* at 43.

In addition, the trial court acknowledged and discussed Watts' PSI report with the prosecution and defense counsel, making corrections to it requested by counsel. *Id.* at 4-8, 43, 53. The trial court further acknowledged receipt of the parties' sentencing memoranda and discussed with counsel a discrepancy between what the parties' indicated as the standard-range sentence on two of the counts on lower court docket number 2469-2023. *Id.* at 8-9.

At the end of the sentencing hearing, the trial court explained its sentencing order:

> The [trial c]ourt is entering this [o]rder after careful review of the record in this case as well as the presentations made today and

all the written material submitted including the [PSI report] and Sentencing Guidelines. The [trial c]ourt believes [Watts] is receiving consecutive sentences because he's not entitled to a volume discount for the sale of fentanyl … over the three events that occurred in this case. The [trial c]ourt believes this sentence is appropriate to address the gravity of the offenses, to protect the public, and also to address [Watts'] rehabilitative needs which [it has] considered in imposing the conditions of his sentence. … Furthermore, the [trial c]ourt is imposing a bottom-of-the-standard-range sentence on the deliveries with no further sentence imposed at some of the counts, concurrent and consecutive sentence imposed at other counts, and imposing a one year of reentry as required by statutory law. … The [trial c]ourt further finds that [Watts] has shown no remorse for his actions despite overwhelming circumstantial evidence of [Watts'] committance of these offenses. The [trial c]ourt would further note [Watts'] escalation of criminal activity from the – from a young age wherein he received various sentences of costs and fines, probation, county sentences, and was on supervision at the time he committed the instant offenses. … The [trial c]ourt finds that [Watts] has numerous children for which he has no responsibility and has not had – historically has had responsibility but relies on the kindness and generosity of his mother, her husband, and his grandmother to provide the needs for the children. Furthermore, the [trial c]ourt finds [Watts] has no employment history either. … It is [the] hope that with the rehabilitative conditions imposed today that [Watts] can receive the assistance that he may need for any mental health or drug and alcohol treatment as well as receive educational and employment training and further be a productive member of society who can provide the care necessary for the family members that he has.

*Id.* at 62-63; *see also* Trial Court Opinion, 6/6/2025, at 18-19; Sentencing Order, 5/13/2025, at 9-10.

In sum, the record confirms that the trial court was aware of all appropriate sentencing factors and considerations and expressly considered all the mitigating evidence Watts presented. Further, the court had the benefit of a PSI report; having been so informed, its discretion should not be

disturbed. ***See Miller***, 275 A.3d at 535; ***Rhoades***, 8 A.3d at 919. Accordingly, even if Watts invoked our jurisdiction to review his challenge to the discretionary aspects of his sentence, we would discern no basis to conclude that the trial court abused its discretion.

## Conclusion

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 4/24/2026